OPINION OF THE COURT
Titone, J.
The District of Columbia Nonprofit Corporation Act and New York’s Not-For-Profit Corporation Law both empower *557 corporate entities to "sue and be sued.” We are asked in this case to hold that reference to the District of Columbia Nonprofit Corporation Act in the charter of a tribal social service agency incorporated thereunder, along with that corporation’s qualification to do business in New York, constitutes a waiver of tribal sovereign immunity. We hold that reference in the corporate charter to statutory authority to sue and be sued, standing alone, neither constitutes an express and unequivocal waiver of sovereign immunity nor subjects the tribal entity to the jurisdiction of New York’s courts.
I
Petitioners James W. Ransom, Wesley Laughing, Brian D. Cole and Sakakohe Pembleton are members of the St. Regis Mohawk Tribe (Tribe) employed by respondent St. Regis Mohawk Education and Community Fund (Fund). Respondent Fund is a nonprofit corporation organized in 1982[1] pursuant to the District of Columbia Nonprofit Corporation Act to provide educational, health care, social and historical services to residents of the St. Regis Mohawk Reservation. Respondents L. David Jacobs, Norman Tarbell and Lincoln C. White are directors of the Fund, and are also the three elected Tribal Chiefs of the St. Regis Mohawk Tribe. On October 16, 1990, respondent applied for authorization to do business in the State of New York.
The Fund’s articles of incorporation provide that "[t]he corporation may exercise all power or authority granted to it under the District of Columbia Nonprofit Corporation Act or otherwise, including, but not limited to, the power to accept donations or money or property, and the power to own or lease property, real or personal.” The Nonprofit Corporation Act states that a corporation formed thereunder "shall have power * * * [t]o sue and be sued, complain and defend, in its corporate name.” None of the corporate certificates contain any express language that the Tribe waives its sovereign immunity.
In 1990, petitioners were suspended or discharged from their various administrative positions with the Fund. Respondent Fund concedes that the grievance procedures outlined in the Tribe’s employment policy and procedures manual were *558 not followed when petitioners sought internal disciplinary review with the appropriate tribal authority.
Petitioners commenced this CPLR article 78 proceeding to challenge their dismissal from employment, claiming they were denied due process when discharged in violation of the Tribe’s Personnel Policy and Procedure Manual and are entitled to reinstatement and back pay. Respondents did not answer, but claimed in responsive affidavits that, because the Fund was an agency of the Tribe, it enjoyed tribal sovereign immunity from this suit.
Supreme Court rejected the sovereign immunity defense, granted the petition, and ordered petitioners’ reinstatement with back pay. The Appellate Division reversed and remitted to Supreme Court for a factual determination of whether petitioners were employees of the Tribe or the Fund, and, if the latter, whether the Fund enjoyed sovereign immunity. On remand, Supreme Court concluded that the Fund had waived its sovereign immunity by virtue of its incorporation and subsequent qualification to do business in New York. Thus, the court adhered to its original determination that respondents improperly dismissed petitioners from employment, and that petitioners were entitled to the requested relief.
The Appellate Division reversed and dismissed the petition. The Court held that the Fund was an arm of the tribal government and possessed attributes of tribal sovereignty that precluded suit against it absent a waiver of immunity. The Court then ruled that such a waiver must be unequivocally expressed, and that the generalized incorporation of corporate powers did not satisfy this waiver standard. We now affirm.
II
That Indian tribes possess common-law sovereign immunity from suit akin to that enjoyed by other sovereigns is part of this Nation’s long-standing tradition (Santa Clara Pueblo v Martinez, 436 US 49, 58; Matter of Patterson v Council of Seneca Nation, 245 NY 433).[2] Tribal subagencies and corporate *559 entities created by the Indian Nation to further governmental objectives, such as providing housing, health and welfare services, may also possess attributes of tribal sovereignty, and cannot be sued absent a waiver of immunity (see, Weeks Constr. v Oglala Sioux Hous. Auth., 797 F2d 668 [8th Cir 1986]; Namekagon Dev. Co. v Bois Forte Reservation Hous. Auth., 395 F Supp 23 [D Minn 1974], affd 517 F2d 508 [8th Cir 1975]). Although no set formula is dispositive, in determining whether a particular tribal organization is an "arm” of the tribe entitled to share the tribe’s immunity from suit, courts generally consider such factors as whether: the entity is organized under the tribe’s laws or constitution rather than Federal law; the organization’s purposes are similar to or serve those of the tribal government; the organization’s governing body is comprised mainly of tribal officials; the tribe has legal title or ownership of property used by the organization; tribal officials exercise control over the administration or accounting activities of the organization; and the tribe’s governing body has power to dismiss members of the organization’s governing body (see, Vetter, Doing Business with Indians and the Three ”S”es: Secretarial Approval, Sovereign Immunity and Subject Matter Jurisdiction, 36 Ariz L Rev 169, 176 [1994]). More importantly, courts will consider whether the corporate entity generates its own revenue, whether a suit against the corporation will impact the tribe’s fiscal resources, and whether the subentity has the "power to bind or obligate the funds of the [tribe]” (Altheimer & Gray v Sioux Mfg. Corp., 983 F2d 803, 809 [7th Cir 1993], cert denied — US —, 114 S Ct 621). The vulnerability of the tribe’s coffers in defending a suit *560 against the subentity indicates that the real party in interest is the tribe.
The conclusion that respondent Fund is a tribal entity which enjoys sovereign immunity from suit is fully supported by the record. The Fund was established to enhance the health, education and welfare of Tribe members, a function traditionally shouldered by tribal government. Additionally, the Fund received its resources from the Tribe, and the Tribe was designated by the Fund as the recipient of its funds and services. Critically, under its by-laws, the Fund’s governing body may only be comprised of elected Chiefs of the Tribe. Thus, the Fund’s provision of social services on behalf of and under the direct fiscal and administrative control of the Tribe renders it an entity so closely allied with and dependent upon the Tribe that it is entitled to the protection of tribal sovereign immunity.
Ill
The remaining and more difficult question here is whether New York courts have jurisdiction over this action against the Fund. Having sovereign status, the tribal entity is not subject to the jurisdiction of the New York courts without its consent.[3] Thus, the pivotal inquiry is whether the Fund has waived its sovereign immunity and submitted to suit in our courts.
The sovereignty of an Indian Nation may be waived by the tribe itself or by an act of Congress (Oklahoma Tax Commn. v Potawatomi Tribe, 498 US 505 [1991]), which has "superior and plenary control” over Indians (Santa Clara Pueblo v Martinez, 436 US 49, 58 [1978], supra). Because preserving tribal resources and tribal autonomy are matters of vital importance, the United States Supreme Court has repeatedly stated that a waiver of tribal sovereign immunity " ' "cannot be implied but must be unequivocally expressed” ’ ” (id., quoting United States v King, 395 US 1, *561 4).[4] Importantly, to be valid, waivers of tribal sovereign immunity "must be traceable to an official government action (statute, ordinance, resolution) that expressly and unequivocally waives immunity or empowers particular officers to waive immunity” (Vetter, Doing Business with Indians and the Three "S”es: Secretarial Approval, Sovereign Immunity and Subject Matter Jurisdiction, 36 Ariz L Rev 169, 193). Additionally, waivers of immunity "are to be strictly construed in favor of the Tribe” (Rupp v Omaha Indian Tribe, 45 F3d 1241, 1245 [8th Cir 1995]). In fact, while the United States Supreme Court "has expressed its protectiveness of tribal sovereign immunity by requiring that any waiver be explicit, it has never required the invocation of 'magic words’ stating that the tribe hereby waives its sovereign immunity” (Rosebud Sioux Tribe v Val-U Constr. Co., 50 F3d 560, 563 [8th Cir 1995], cert denied — US —, 116 S Ct 78).
Waivers of sovereign immunity have been accomplished in corporate charters through a variety of formulations that commonly include terms expressing the corporation’s amenability to suit and the tribe’s intent that certain matters be resolved in a particular judicial or arbitral forum (see, e.g., Namekagon Dev. Co. v Bois Forte Reservation Hous. Auth., 517 F2d 508 [8th Cir 1975], supra).[5] For example, the Seventh Circuit Court of Appeals determined that the requisite unequivocal expression of a waiver was accomplished by the Sioux Indians in Altheimer & Gray v Sioux Mfg. Corp. (983 F2d 803, 812 [1993], supra). In that case, the Sioux Tribe *562 passed a tribal law and order code section providing that sovereign immunity may be limited by a tribal entity’s charter. In turn, the charter of a tribal corporation engaged in the manufacturing of military supplies stated that sovereign immunity " 'is hereby expressly waived with respect to any written contract entered into by the Corporation.’ ” Additionally, the terms of a letter of intent concerning a specific corporate contract stated that the tribe and its corporation agreed to " 'waive all sovereign immunity in regards to all contractual disputes’ ” and that all parties "agree to submit to the venue and jurisdiction of the federal and state courts located in the State of Illinois.” Similarly, in Rosebud Sioux Tribe v Val-U Constr. Co. (50 F3d 560, supra), the Eighth Circuit Court of Appeals held that the inclusion of a "sue and be sued” clause within a tribal corporation’s charter, plus an arbitration clause in a contract executed thereunder constituted an express waiver of sovereign immunity and submission to an arbitral forum. Waiver has also been found where the tribal entity affirmatively subjected itself to the jurisdiction of the Federal District Court by initiating a lawsuit, and requesting that the court consider the asserted counterclaims (Rupp v Omaha Indian Tribe, 45 F3d 1241, 1244 [8th Cir 1995], supra).
By contrast, in American Indian Agric. Credit Consortium v Standing Rock Sioux Tribe (780 F2d 1374 [1985], supra), the Eighth Circuit concluded that a tribal resolution authorizing the securing of a loan coupled with language in a promissory note referring to default remedies, the right to charge interest "in addition to such other and further rights and remedies provided by law”, and a choice of District of Columbia law, together failed to satisfy Santa Clara Pueblo’s requirement of an express and unequivocal waiver, notwithstanding the fact that a waiver of immunity from suit could easily be implied from that collective language (id., at 1377). According to the Eighth Circuit, the missing link in Standing Rock was that the tribe "did not explicitly consent to submit any dispute over repayment on the note to a particular forum, or to be bound by its judgment” (id., at 1380-1381).
Petitioners here urge that the Tribe expressed its intent to waive its sovereign immunity by (1) including a provision in the Fund’s articles of incorporation which states that "[t]he corporation may exercise all power or authority granted to it under the District of Columbia Nonprofit Corporation Act or otherwise, including, but not limited to, the power to accept *563 donations or money or property, and the power to own or lease property, real or personal,” and (2) qualifying to do business in New York as a foreign corporation. The District of Columbia Nonprofit Corporation Act in turn lists as a general power of a corporation formed thereunder the power to "sue and be sued” (DC Nonprofit Corporation Act § 29-505). New York’s Not-For-Profit Corporation Law provides that a foreign corporation authorized to do business in the State designates the Secretary of State as its agent for service of process (NPCL 1304) and "shall have power in furtherance of its corporate purposes to "sue and be sued in all courts and to participate in actions and proceedings, whether judicial, administrative, arbitrative or otherwise” (N-PCL 202 [a] [2]). Petitioners claim that by incorporating and subjecting the entity to the provisions of both the New York Not-For-Profit Corporation Law and the District of Columbia Nonprofit Corporation Act, the Fund is automatically amenable to suit in our courts. This claim does not satisfy the high threshold for a valid waiver of immunity.
Here, the Tribe has not explicitly consented in the Fund’s charter, or by any ordinance or resolution, to waive its sovereign immunity, submit corporate disputes to the jurisdiction of our courts or be bound by such judgment. Critically, as stated in the related context of State waivers of Eleventh Amendment immunity from suit, the "sue and be sued” language contained in State corporation statutes means "only that the entity has the status and capacity to enter our courts, and does not signify a waiver of sovereign immunity against suit” (Howard v Liberty Mem. Hosp., 752 F Supp 1074, 1077 [SD Ga 1990]; see also, Tuveson v Florida Governor’s Council on Indian Affairs, 734 F2d 730, 734 [11th Cir 1984] [not-for-profit incorporation of State agency under statutory scheme which permits corporation to sue and be sued is not a sufficiently explicit waiver of the State’s Eleventh Amendment sovereign immunity]). Thus, the mere fact that a tribal corporation, by statute, has designated an agent for service of process or is empowered to "sue and be sued” does not automatically subject that corporate entity to any court’s jurisdiction where jurisdiction is otherwise lacking. In other words, the general powers provisions of the corporation statutes are not self-executing, and express invocation of the power to sue and be sued and submission to a particular forum by official tribal action is required.
*564 Under this line of reasoning, reference in the Fund’s corporate charter to the statutory power to sue and be sued contained in the D.C. and New York nonprofit corporation laws did nothing more than recognize the Fund’s status as an entity with the capacity to enter our courts. However, quite unlike the expressions of waiver in Rosebud (supra), Altheimer (supra) and Namekagon (supra), the St. Regis Mohawk Tribe never explicitly stated in its charter or otherwise that it would invoke that power, waive its immunity and submit to the jurisdiction of our courts to resolve corporate matters. Thus, the requirement of an express and unequivocal waiver of tribal sovereign immunity remains unsatisfied by mere incorporation by reference in the charter of the statutory power to sue and be sued (cf., Altheimer & Gray v Sioux Mfg. Corp., 983 F2d 803, 812, supra).
IV
Petitioners contend that even if the corporation was cloaked with the sovereign’s veil of immunity from suit, the individual respondents Jacobs, Tarbell and White acted outside the scope of their authority by failing to afford petitioners the disciplinary process outlined in the Tribe’s Personnel Policy and Procedure Manual and thus were stripped of any immunity they may have possessed. Because respondents’ acts, at most, involve the erroneous exercise of their delegated duties, their acts are not ultra vires, and, as tribal officials acting in their representative capacity and within the scope of their authority, they remain protected by the sovereign immunity enjoyed by the Fund (see, Hardin v White Mtn. Apache Tribe, 779 F2d 476, 479 [9th Cir]; Snow v Quinault Indian Nation, 709 F2d 1319, 1321 [9th Cir 1983], cert denied 467 US 1214).
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Kaye and Judges Simons, Bellacosa, Smith, Levine and Cipakick concur.
Order affirmed, with costs.

. Respondent Fund was originally incorporated under the name "St. Regis Mohawk Tribal Council, Inc.” Several months later, the corporation’s name was changed to its present name.

. We initially note that petitioners’ argument that the doctrine of sovereign immunity is not applicable to the St. Regis Mohawk Tribal Council, nor to the derivative Fund because the former body is a creature of and governed by New York statute, is similar to the claim rejected by this Court in Matter of Patterson v Council of Seneca Nation (245 NY 433, supra). In Patterson, we stated that, notwithstanding the enactment of provisions by this State’s Legislature to assist the Seneca Indians in admin *559 istering the affairs of government (see, Indian Law art 4), the relevant portions of the New York Indian Law did "not otherwise make applicable to Indians either the common law or statute law of the State,” and did "not abrogate Indian customs or usages” (Patterson, supra, at 445). Thus, the Court reached the "inescapable” conclusion "that the Seneca tribe remains a separate nation; that its powers of self-government are retained with the sanction of the State; that the ancient customs and usages of the nation, except in a few particulars, remain, unabolished, the law of the Indian land; that in its capacity of a sovereign nation the Seneca Nation is not subservient to the orders and directions of the courts of New York State” (id.). So too, here, the enactment of article 8 of the Indian Law, which speaks generally to the powers of tribal officials, the conduct of elections, the allotment of lands and the jurisdiction of the tribal council to determine disputes (see, Indian Law art 8), does not divest the Tribe of its sovereign immunity, but rather advances the desired attribute of tribal self-gavernonce.

. Petitioners seek to predicate the jurisdiction of the New York courts on 25 USC § 233 and New York’s Indian Law § 5, which similarly grant our courts jurisdiction in civil actions "between Indians or between one or more Indians and any other person or persons.” However, those provisions govern private disputes between individual Indians, not disputes between an Indian and a sovereign tribe (see, People v Anderson, 137 AD2d 259). Because the Fund is to be treated as the Tribe itself, it is not "an Indian;” nor is it a "person,” notwithstanding the fact that it has incorporated.

. Although the United States Supreme Court has not directly addressed the point, at least one Federal Circuit Court of Appeals has ruled that regardless of whether the waiver is externally imposed by Congress or by an act of the tribe itself, there is no distinction in the requirement of an explicit and unequivocal waiver (see, American Indian Agric. Credit Consortium v Standing Rock Sioux Tribe, 780 F2d 1374,1377 [8th Cir 1985]).

. In Namekagon Dev. Co. v Bois Forte Reservation Hous. Auth., (517 F2d 508 [8th Cir 1975], supra), a waiver of sovereign immunity was effectuated by the tribal council’s inclusion of a "sue and be sued” provision within a tribal ordinance creating the Housing Authority. The clause stated that "[t]he Council hereby gives its irrevocable consent to allowing the Authority to sue and be sued in its corporate name, upon any contract, claim or obligation arising out of its activities under this ordinance and hereby authorizes the Authority to agree by contract to waive any immunity from suit which it might otherwise have; but the Band shall not be liable for the debts or obligations of the Authority, except insofar as expressly authorized by this ordinance” (517 F2d, at 509 [emphasis added]). Notably, the subject matter jurisdiction of the Federal courts over this action apparently was not contested on appeal.