**Hilda GARCIA, Plaintiff,**

v.

**AKWESASNE HOUSING AUTHORITY and John Ransom, Defendants.**

No. 7:99–CV–1975.

United States District Court, N.D. New York.

July 19, 2000.

Mark Schneider, Plattsburgh, NY, for Plaintiff.

Barr & Associates, Stowe, VT, Russell D. Barr, of counsel, for Defendants.

## MEMORANDUM–DECISION AND ORDER

McAVOY, District Judge.

### I. Background

On November 12, 1999, Plaintiff Hilda Garcia commenced the instant action against Defendants Akwesasne Housing Authority ("AHA") and John Ransom, in his personal capacity, alleging, *inter alia*, that Defendants unlawfully terminated her employment with the AHA.

Plaintiff is a Native American who is not a member of the St. Regis Mohawk Tribe. Defendant AHA is a housing authority whose stated purpose is to provide public housing on the Akwesasne Reservation using federal funds administered by the Department of Housing and Urban Development ("HUD"). At all times relevant to this action, Defendant Ransom was the Chairman of the Board of Commissioners of the AHA. *See* Amended Compl. at ¶¶ 6–9. The impetus for the instant action was Plaintiff's termination from her position as the Executive Director of the AHA. Plaintiff's termination was formally ordered in a Tribal Resolution executed by members of the Tribal Council on June 25, 1999.[1]

---

**1.** The Tribal Resolution stated, in relevant part:

Upon ... Council's review of the situation, we have come to the conclusion that termination of [Plaintiff] from the [AHA] would be in the best interest of the [AHA] at this time.

In an Amended Complaint filed January 24, 2000, Plaintiff brings federal claims against Defendants pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), the Indian Civil Rights Act, 25 U.S.C. § 1301 et seq. ("ICRA"), and 42 U.S.C. § 1983 (the ICRA and section 1983 claims are based on whistle blower/retaliation violations). See id. at ¶¶ 46–54. Plaintiff also asserts state-based claims against Defendants for wrongful termination (based on alternate theories of breach of contract, primary estoppel and violation of public policy) and retaliatory discharge, in violation of N.Y. Civ. Serv. Law § 75–b,[2] see id. at ¶¶ 55–67, and brings a separate state-based claim against Defendant Ransom for tortious interference with contract, see id. at ¶¶ 68–73. In connection with these claims, Plaintiff seeks injunctive relief, reinstatement, compensatory and punitive damages, and attorney's fees and costs.

On January 7, 2000, Defendants moved to dismiss the First Verified Complaint pursuant to Fed. R. Civ. P. 12(b)(1). See Notice of Motion (Docket No. 10). On January 21, 2000, Plaintiff served and filed an Amended Complaint in the present action pursuant to Fed. R. Civ. P. 15(a). See generally Amended Compl. (Docket No. 7). Because Defendants' motion to dismiss addressed the original Complaint, rather than the Amended Complaint, the Court ordered that Defendants' motion to dismiss the original Complaint be denied as moot. See Garcia v. Akwesasne Housing Authority, 99–CV–1975 (Decision and Order dated March 21, 2000). In the present motion, Defendants AHA and Ransom move to dismiss the Amended Complaint for lack of subject matter jurisdiction pur-

suant to Fed. R. Civ. P. 12(b)(1). Because Defendants challenge the Court's subject matter jurisdiction over the instant action, materials outside the pleadings will be considered. See Kamen v. American Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir.1986); Williams v. Muller, 2000 WL 487954, at *2 (S.D.N.Y. Apr.25, 2000). The Court will treat the instant motion separately with respect to Defendants AHA and Ransom.

## II. Discussion

In seeking to dismiss the instant action, Defendant AHA argues that as an agency of the St. Regis Mohawk Tribe (the "Tribe"), it is entitled to sovereign immunity and, thus, this Court lacks jurisdiction with respect to Garcia's claims.[3] See Defts. Mem. of Law at 4–11. In response, Plaintiff argues that the "sue and be sued" clause contained in the Tribal Ordinance ("Ordinance") establishing the AHA operates as an express waiver of the AHA's sovereign immunity and, thus, this Court has jurisdiction with respect to Plaintiff's claims. See Pl. Mem. of Law at 1–9. Because the issue of whether the AHA is entitled to sovereign immunity turns on the language of the "sue and be sued" clause contained in the Ordinance, an examination of that provision and the terms and conditions of the Ordinance is warranted.

The AHA was established pursuant to Tribal Ordinance and was organized for the purpose of: (1) remedying unsafe and unsanitary housing conditions on the St. Regis Mohawk Reservation; (2) alleviating the shortage of safe and sanitary dwellings for low income persons; and (3) providing employment opportunities through con-

---

Although Council recognizes [Plaintiff's] years of service to the AHA, the breakdown of working relationships and communication between [Plaintiff] and staff have not made proper administration of this program by [Plaintiff] to be a future possibility.
Affidavit of Chiefs Alma Ransom, Hilda E. Smoke, and Paul O. Thompson (attached copy of June 25, 1999 Tribal Resolution).

2. In her Amended Complaint, Plaintiff labels this claim as a retaliatory action brought pursuant to "Public Servants § 75–b."

3. Plaintiff does not dispute that the St. Regis Mohawk Tribe is a federally recognized tribe and that the AHA is an agency of the St. Regis Mohawk Tribe. See Defts. Mem. of Law at 7, 9; Amended Compl. at ¶ 8.

struction and improvement of low income dwellings. *See* Ordinance at Art. II. The "sue and be sued" clause contained in the Ordinance provides:

> The Council hereby gives its irrevocable consent to allowing the [AHA] to sue and be sued in its corporate name, upon any contract, claim or obligation arising out of its activities under this ordinance and *hereby authorizes the [AHA] to agree by contract to waive any immunity from suit which it might otherwise have;* but the Tribe shall not be liable for the debts or obligations of the [AHA].

*Id.* at Art. V(2) (emphasis added).

Each party interprets the instant clause differently. Plaintiff contends that the clause operates, on its face, as an express and unequivocal waiver of tribal sovereign immunity. Defendants, on the other hand, contend that the clause is not self-executing, but rather requires the execution of a separate written contract waiving tribal sovereign immunity.

## A. The Status of Indian Tribes and Sovereign Immunity

"The waiver of sovereign immunity is a prerequisite to subject-matter jurisdiction, ... but the issues of subject-matter jurisdiction and sovereign immunity are nonetheless wholly distinct." *Presidential Gardens Assocs. v. United States ex rel. Secretary of Hous. and Urban Dev.*, 175 F.3d 132, 139 (2d Cir.1999) (internal quotations and citations omitted). "A showing of jurisdiction is not alone sufficient to allow the instant suit to proceed—there must also be a showing of specific waiver of sovereign immunity." *Id.*

Indian tribes are treated as sovereign entities and function as "distinct, independent political communities, retaining their original natural rights in matters of local self-government." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 55, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978) ("*Santa Clara*") (internal quotations omitted); *see also Ninigret Dev. Corp. v. Narragansett Indian Wetuo-*

*muck Hous. Auth.*, 207 F.3d 21, 29 (1st Cir.2000) ("*Ninigret*") ("The immunity rests on the status of Indian tribes as autonomous political entities, retaining their original natural rights with regard to self-governance."); *Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d 874, 880 (2d Cir.), *cert. denied*, 519 U.S. 1041, 117 S.Ct. 610, 136 L.Ed.2d 535 (1996). As such, "tribal courts have inherent power to exercise civil jurisdiction over non-Indians in disputes affecting the interests of Indians which are based upon events occurring on a reservation." *Weeks Constr., Inc. v. Oglala Sioux Hous. Auth.*, 797 F.2d 668, 673 (8th Cir.1986) ("*Weeks*").

■ It is well-settled that, absent abrogation or a clear and unequivocal waiver, Indian tribes possess sovereign immunity. *See Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 498 U.S. 505, 509, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991); *Santa Clara*, 436 U.S. at 58, 98 S.Ct. 1670; *Dillon v. Yankton Sioux Tribe Hous. Auth.*, 144 F.3d 581, 583 (8th Cir.1998); *Ransom v. St. Regis Mohawk Educ. and Community Fund, Inc.*, 86 N.Y.2d 553, 560, 635 N.Y.S.2d 116, 658 N.E.2d 989 (1995) ("Because preserving tribal resources and tribal autonomy are matters of vital importance, the United States Supreme Court has repeatedly stated that a waiver of tribal sovereign immunity cannot be implied but must be unequivocally expressed.") (internal quotations omitted). Notwithstanding their status as a distinct and independent political entities, "Congress has plenary authority to limit, modify or eliminate the powers of local self-government which the tribes otherwise possess." *Santa Clara*, 436 U.S. at 56, 98 S.Ct. 1670; *see also Ninigret*, 207 F.3d at 29 ("[T]he doctrine of tribal sovereign immunity precludes a suit against an Indian tribe except in instances in which Congress has abrogated that immunity or the tribe has foregone it.") (citing *Kiowa Tribe of Oklahoma v. Manufacturing Techs., Inc.*, 523 U.S. 751, 754, 118 S.Ct. 1700, 140

L.Ed.2d 981 (1998)); *Poodry*, 85 F.3d at 881; *Weeks*, 797 F.2d at 673. "While tribal sovereign immunity is not absolute, waivers of sovereign immunity are strictly construed." *Seneca–Cayuga Tribe of Oklahoma v. State of Oklahoma*, 874 F.2d 709, 715 (10th Cir.1989); *see also Ransom*, 86 N.Y.2d at 561, 635 N.Y.S.2d 116, 658 N.E.2d 989 ("[W]aivers of immunity are to be strictly construed in favor of the [t]ribe.") (internal quotations omitted).

The AHA, as an arm of the St. Regis Mohawk Tribe, "enjoys the full extent of the Tribe's sovereign immunity." *Ninigret*, 207 F.3d at 29 (citing *Dillon*, 144 F.3d at 583–84; *Weeks*, 797 F.2d at 670–71; *see also Hagen v. Sisseton–Wahpeton Community College*, 205 F.3d 1040, 1043 (8th Cir.2000); *Ransom*, 86 N.Y.2d at 558–59, 635 N.Y.S.2d 116, 658 N.E.2d 989 ("Tribal subagencies ... created by the Indian Nation to further governmental objectives, such as providing housing, health and welfare services, may also possess attributes of tribal sovereignty, and cannot be sued absent a waiver of immunity."). Notably, Plaintiff does not dispute this point in her opposition papers. *See* Pl. Mem. of Law at 1 ("Plaintiff agrees that Indian tribes, and their entities and agencies, normally have sovereign immunity against lawsuits.") Accordingly, for the purposes of the instant motion, the AHA must be treated "as a tribal agency rather than a separate corporate entity created by the [T]ribe." *Dillon*, 144 F.3d at 583.

In *Ninigret*, the First Circuit was confronted with a similar "sue and be sued" clause in a case where, as a requirement for entering into a contract for the construction of a low-income housing development, "HUD required the enactment of a tribal ordinance containing pat terminology as a condition precedent to an Indian housing authority receiving federal funds." 207 F.3d at 29–30. In finding that the "sue and be sued" clause, standing alone, did not result in a waiver of the Housing

Authority's sovereign immunity, the First Circuit stated:

An occasional case appears to have held that the enactment of such an ordinance, without more, constitutes an effective waiver of sovereign immunity. In our judgment, the better view holds that the enactment of such an ordinance, in and of itself, does not waive a tribe's sovereign immunity. *After all, the ordinance, by its terms, authorizes the Authority to shed its immunity from suit "by contract," and these words would be utter surplusage if the enactment of the ordinance itself served to perfect the waiver.* Statutes and ordinances normally should be read to give effect to every word and phrase and there is no compelling reason to make this case an exception.

*Id.* at 30 (internal citations omitted) (emphasis added).

The Court finds the reasoning set forth in *Ninigret* persuasive. Given the long-standing policies favoring sovereign immunity for Indian tribes and their agencies and the requirement that any waiver of tribal sovereign immunity be clear and unequivocal, the Court finds the *HUD-mandated* language contained in the Ordinance insufficient, in and of itself, to operate as a general waiver of the AHA's tribal immunity from suit. Moreover, the express language of the "sue and be sued" clause requires that any waiver of that immunity be effectuated by separate contract. Like the scenario presented in *Dillon*, here, the AHA did not have a separate written contract with Plaintiff and, thus, "never explicitly waived its sovereign immunity through a written contract.... [and] could not have waived its sovereign immunity through an implied agreement." *Dillon*, 144 F.3d at 584. Here, Plaintiff does not dispute that any such separate contract was executed; rather, she argues that the clause by itself constitutes a waiver of the AHA's sovereign immunity. Several other courts that construed similar clauses have reached the same result.[4]

4. Plaintiff's incorrectly relies on *Weeks* as support for her position that the "sue and be

*See Dillon,* 144 F.3d at 583–84; *Buchanan v. Sokaogon Chippewa Tribe,* 40 F.Supp.2d 1043, 1047 (E.D.Wis.1999); *but see Snowbird Constr. Co., Inc. v. United States,* 666 F.Supp. 1437, 1441 (D.Idaho 1987). Because Plaintiff has not established that the Tribal Ordinance constitutes a general waiver of sovereign immunity or that any of the Defendants entered into any separate written contract waiving tribal immunity after the ordinance was enacted, the Court finds that neither the Tribe nor the AHA waived its tribal sovereign immunity with respect to the instant action. Accordingly, this Court lacks jurisdiction to hear the claims raised against the AHA in the instant dispute.[5]

### B. Claims Against John Ransom

While sovereign immunity generally protects the tribe from suit, individual tribal members may not, in certain circumstances, be afforded the same blanket of immunity enjoyed by the tribe. The determination of whether a tribal official enjoys sovereign immunity is based, in part, on the nature of the claims alleged in the Amended Complaint. Accordingly, the threshold distinction is between Ransom's actions in his representative or official capacity as the Chairman of the Board of Commissioners of the AHA and those actions taken by Ransom in his personal capacity or outside the scope of his delegated tribal authority.

### 1. Official Capacity Claims

■ As discussed *supra,* sovereign immunity shields a tribe from civil suit unless Congress has specifically abrogated the tribe's immunity or the tribe has expressly waived its immunity. *See, e.g., Kiowa Tribe,* 523 U.S. at 751, 118 S.Ct. 1700; *Santa Clara,* 436 U.S. at 56–58, 98 S.Ct. 1670; *Ninigret* 207 F.3d at 29. Courts have further held that tribal sovereign immunity "also extends to tribal officials when acting in their official capacity and within their scope of authority." *U.S. v. Oregon,* 657 F.2d 1009, 1013 n. 8 (9th Cir.1981); *see also Florida v. Seminole Tribe of Florida,* 181 F.3d 1237, 1244–45 (11th Cir.1999); *Tamiami Partners, Ltd. ex rel. Tamiami Dev. Corp. v. Miccosukee Tribe of Indians of Florida,* 177 F.3d 1212, 1225 (11th Cir.1999) ("[T]ribal officers are protected by tribal sovereign immunity when they act in their official capacity and within the scope of their authority; however, they are subject to suit under the doctrine of *Ex parte Young* when they act beyond their authority.") (footnote omitted), *reh'g and reh'g en banc denied,* 196 F.3d 1263 (11th Cir.1999) (Table), *cert. denied,* —— U.S. ——, 120 S.Ct. 1419, 146 L.Ed.2d 311 (2000); *Northern States Power Co. v. Prairie Island Mdewakanton Sioux Indian Community,* 991 F.2d 458, 460 (8th Cir.1993) (citing *Tenneco Oil Co. v. Sac and Fox Tribe of Indians,* 725 F.2d 572, 574–75 (10th Cir.1984)); *Hardin v. White Mountain Apache Tribe,* 779 F.2d 476, 479 (9th Cir.1985); *but see TTEA v. Ysleta Del Sur Pueblo,* 181 F.3d 676, 680–81 (5th Cir.1999) (sovereign immunity does not extend to suits against tribal officials

---

sued" clause operates as a waiver of sovereign immunity in the present case. In *Dillon,* the Eighth Circuit distinguished the facts of *Weeks* (decided by the Eighth Circuit twelve years earlier), on the basis that, in *Weeks,* "an express waiver of sovereign immunity was found in a written contract." *Dillon,* 144 F.3d at 583; *see also Buchanan,* 40 F.Supp.2d at 1047.

**5.** Plaintiff's contention that her claim for declaratory and injunctive relief against the AHA survives even if it is determined that the AHA is protected by tribal sovereign immunity is misplaced. As the Second Circuit stated in *Bassett v. Mashantucket Pequot Tribe,* 204 F.3d 343 (2d Cir.2000):

> It may be that the district court will conclude, upon further analysis, that the museum is an agency of the Tribe and, as such, is entitled to benefit from the Tribe's immunity. If so, plaintiff would need to amend its pleading to seek the injunction against the administrators of the Museum, rather than the museum itself.

*Id.* at 358 (internal citations omitted); *see also Santa Clara,* 436 U.S. at 58–59, 98 S.Ct. 1670; *Florida v. Seminole Tribe of Florida,* 181 F.3d 1237, 1244–45 (11th Cir.1999).

seeking declaratory or injunctive relief regardless of scope of authority). Therefore, to the extent Plaintiff's claims against Ransom can be construed as official or representative capacity claims, namely in Ransom's delegated authority as Chairman of the Board of Commissioners of the AHA, such claims are barred by extension of the Tribe's sovereign immunity.

### 2. Personal Capacity Claims

■ Generally, a tribal official lacks the protection of sovereign immunity if he acts completely outside the scope of his delegated authority. *See, e.g., Baker Elec. Coop., Inc. v. Chaske,* 28 F.3d 1466, 1471 (8th Cir.1994); *United States v. Yakima Tribal Court,* 806 F.2d 853, 860 (9th Cir. 1986), *cert. denied,* 481 U.S. 1069, 107 S.Ct. 2461, 95 L.Ed.2d 870 (1987); *Tenneco Oil Co.,* 725 F.2d at 576 n. 1. This point is not disputed by the parties. *See* Pl. Mem. of Law at 9–10; Defts. Mem. of Law at 8. However, an act completely outside an individual's scope of authority is to be distinguished from a situation where an employee acting as an agent of an employer commits an act that is essentially a mistake of fact or law. *See, e.g., Yakima,* 806 F.2d at 859–60 ("We do hold that, unlike constitutional violations, there is no per se divestiture of sovereign immunity when statutes or regulations are violated while an agent is pursuing his authorized duties."); *Ransom,* 86 N.Y.2d at 564, 635 N.Y.S.2d 116, 658 N.E.2d 989. Therefore, "[a] simple mistake of fact or law does not necessarily mean that an officer of the government has exceeded the scope of his authority. Official action is still action of the sovereign, even· if it is wrong, if it do[es] not conflict with the terms of [the officer's] valid statutory authority...." *Yakima,* 806 F.2d at 860 (brackets in origi-

nal) (internal quotations omitted). In contrast, "[u]ltra vires claims rest on the official's lack of delegated power." *Id.* (citing *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 102 n. 11, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)). This, of course, begs the question of whether the claims against Ransom are predicated upon actions he took pursuant to his delegated authority as Chairman of the Board of Commissioners of the AHA, notwithstanding Plaintiff's allegation that Ransom acted outside the scope of that delegated authority.

■ In her Amended Complaint, Plaintiff alleges that Ransom acted in his personal capacity and outside the scope of his tribal authority in "terminating, or causing to be terminated, the employment of Plaintiff for personal, retaliatory, and unlawful reasons." [6] Amended Compl. at ¶ 71. This characterization, however, stands in contrast to the other allegations and events that form the basis of Plaintiff's claims against Defendants. *See generally* Amended Compl. An examination of the Ordinance establishing the AHA and the scope of Ransom's duties demonstrates that Ransom's employment actions fall within the scope of his delegated authority as Chairman of the Board of Commissioners of the AHA and, thus, were performed in his official, rather than personal capacity. An examination of the Ordinance and Plaintiff's allegations supports this determination.

As previously noted, the AHA was established to, *inter alia,* provide sanitary, low-income housing for members of the Tribe. *See* Ordinance at Art. II § 1; *see also Ninigret,* 207 F.3d at 32 ("[A] tribe's efforts to provide housing to tribal mem-

---

**6.** In her Amended Complaint, Plaintiff generally alleges that Ransom "is being sued in his personal capacity for his *ultra vires* actions against Plaintiff." Amended Compl. at ¶ 9. It is unclear whether this general, conclusory allegation is sufficient, standing alone, to state a claim against Ransom for actions taken in his personal capacity and outside the scope of

his delegated authority as Chairman of the Board of Commissioners of the AHA. *See, e.g., Schultea v. Wood,* 47 F.3d 1427, 1433 (5th Cir.1995) ("[T]he district court must insist that a plaintiff suing a public official under § 1983 file a short and plain statement of his complaint, a statement that rests on more than conclusions alone.").

bers is fairly obviously an exercise of its governmental functions."). The Board of Commissioners was established to carry out these objectives and, more generally, to manage the affairs of the AHA. *See* Ordinance at Art. IV, § 1(a)(1). The Board members are appointed by the Tribal Council. *See id.* at § 2.

Plaintiff's claims stem from her alleged unlawful termination from her position as Executive Director of the AHA. It is reasonable to conclude that the hiring and firing of AHA management and support staff pursuant to orders from the Legislative Council fall within the purview of Ransom's scope of delegated authority as Chairman of the Board of Commissioners. Because "[s]cope of authority turns on whether the government official was empowered to do what he did; i.e., whether, even if he acted erroneously, it was within the scope of his delegated power," *Yakima*, 806 F.2d at 860 (citing *Pennhurst*, 465 U.S. at 112 n. 22, 104 S.Ct. 900), Ransom's actions would arguably be classified as official in nature if the Tribe acted lawfully in terminating Plaintiff's employment with the AHA.

Moreover, Ransom fired Plaintiff pursuant to a directive by the Legislative Council ordering that she be immediately terminated because of a "breakdown of working relationships and communication between [Plaintiff] and staff. . . ." Affidavit of Chiefs Alma Ransom, Hilda E. Smoke, and Paul O. Thompson (attached copy of June 25, 1999 Tribal Resolution). Thus, Ransom's firing of Plaintiff was, in actuality, an action taken by the Tribe rather than Ransom personally. As in *Yakima*, it is arguable that Plaintiff's allegations "do no more than embrace improper legal conclusions on scope of authority." 806 F.2d at 860; *see also Ransom*, 86 N.Y.2d at 564, 635 N.Y.S.2d 116, 658 N.E.2d 989 ("Because [defendants'] acts, at most, involve the erroneous exercise of their delegated duties, their acts are not ultra vires, and, as tribal officials acting in their representative capacity and within the scope of

their authority, they remain protected by the sovereign immunity enjoyed by the [St. Regis Mohawk Education and Community] Fund.").

### 3. Tribal Exhaustion

To the extent that Plaintiff alleges valid claims against Ransom in his personal capacity, the Court would nevertheless be obligated to dismiss Plaintiff's claims against Ransom under the tribal exhaustion doctrine.

In *National Farmers Union Insurance Companies v. Crow Tribe of Indians*, 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985) (*"National Farmers"*), the Supreme Court stated that "[u]ntil petitioners have exhausted the remedies available to them in the Tribal Court system, ... it would be premature for a federal court to consider any relief." *Id.* at 857, 105 S.Ct. 2447. In *Basil Cook Enterprises, Inc. v. St. Regis Mohawk Tribe*, 117 F.3d 61 (2d Cir.1997) (*"Basil Cook"*), the Second Circuit stated the reason for such a policy:

> Requiring that litigants present their jurisdictional arguments to tribal courts in the first instance promotes tribal autonomy and dignity and encourages administrative efficiency by permitting the tribal courts to develop a full record prior to potential federal court involvement. The exhaustion requirement also bolsters the legitimacy of tribal courts, encourages them to articulate fully the claims of jurisdiction, and enables later reviewing courts to take advantage of their expertise.

*Id.* at 65 (citation omitted).

In *Basil Cook*, the Second Circuit emphasized this deference by stating that "[a]s long as a tribal forum is arguably in existence, as a general matter, we are bound by *National Farmers* to defer to it." *Id.* at 66.

The *Basil Cook* Court noted, however, that there were three exceptions to the tribal exhaustion requirement. Specifically, the Second Circuit "identified three

narrow circumstances in which litigants may proceed directly to federal court to press their jurisdictional arguments":

> [1] where an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith, or [2] where the action is patently violative of express jurisdictional prohibitions, or [3] where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction.

*Id.* at 65 (citing *National Farmers,* 471 U.S. at 856 n. 21, 105 S.Ct. 2447).

Plaintiff's contention that she exhausted her tribal remedies arguably touches on the third exception set forth in *National Farmers*—that she "attempted to exhaust any remedies for her claims in a tribal court [but][n]o such court existed and no such remedies were available to her." Amended Compl. at ¶ 45. In response, Defendants argue that "[a]s the Plaintiff has not presented her dispute to the Tribal Council, she has not exhausted her Tribal remedies." Defts. Mem. of Law at 16 n. 13.

In support of her contention that she exhausted her remedies at the tribal court level, Plaintiff avers that she "made several attempts to pursue any remedies in a tribal court of appropriate jurisdiction" and that "Defendants refused to provide her with any information regarding initiating an action in a tribal court." Amended Compl. at ¶ 42. Plaintiff further avers that she was not provided with a copy of the laws and rules of the Tribal Court and that Defendants stated that no such documents existed. *See id.* at ¶ 43–44. Significantly, Plaintiff made her request to the Tribal Court on October 13, 1999 and filed the instant action in federal court only one month later.[7] *See generally id.* (dated November 16, 1999).

■ In the present action, Plaintiff filed her claim in this court a little more than a month after not receiving a response to a request as to how to proceed in the Tribal Court. *See* Amended Compl. at ¶ 43. Defendants' failure to respond to Plaintiff's letter within that period does not, in and of itself, compel the conclusion that Plaintiff exhausted her remedies at the Tribal Court level. *See, e.g., Ninigret,* 207 F.3d at 35 ("We caution that the exhaustion

---

7. Plaintiff's reliance on the narrow exception to the tribal exhaustion requirement set forth in *Dry Creek Lodge, Inc. v. Arapahoe and Shoshone Tribes,* 623 F.2d 682 (10th Cir.1980), *cert. denied,* 449 U.S. 1118, 101 S.Ct. 931, 66 L.Ed.2d 847 (1981) (*"Dry Creek"*) is misapplied.

In *Dry Creek,* the Tenth Circuit stated that tribal exhaustion was not required where a party was denied total access to the tribal court. *See id.* at 685 ("It is obvious that the plaintiffs in this appeal have no remedy within the tribal machinery nor with the tribal officials in whose election they cannot participate. The record demonstrates that plaintiffs sought a forum within the Tribes to consider the issue."). Relevant to the *Dry Creek* decision was the nature of plaintiffs' claims: "[t]he reason for the limitations and the references to tribal immunity also disappear when the issue relates to a matter outside of internal tribal affairs and when it concerns an issue with a non-Indian." *Id.*

In *Poodry,* the Second Circuit described the *Dry Creek* exception as narrow and noted that

its reasoning was rejected by other circuit courts. 85 F.3d at 885 n. 14 (citations omitted). The Tenth Circuit has itself limited the reach of *Dry Creek* in subsequent decisions. *See Seneca–Cayuga Tribe of Oklahoma,* 874 F.2d at 715 n. 6 (*"Dry Creek Lodge* was based on highly unusual circumstances."); *White v. Pueblo of San Juan,* 728 F.2d 1307, 1312 (10th Cir.1984) ("[T]he *Dry Creek* opinion must be regarded as requiring narrow interpretation in order to not come into conflict with the decision of the Supreme Court in *Santa Clara.* Accordingly, the *Dry Creek* decision ought to be interpreted to provide a narrow exception to the traditional sovereign immunity bar from suits against Indian tribes in federal courts. In addition, to adhere to the principles of *Santa Clara,* the aggrieved party must have actually *sought a tribal remedy,* not merely have alleged its futility."); *Ramey Constr. Co., Inc. v. Apache Tribe of the Mescalero Reservation,* 673 F.2d 315, 319 n. 4 (10th Cir.1982) ("Th[e] [*Dry Creek*] case involved particularly egregious allegations of personal restraint and deprivation of personal rights that are not present in this action.").

process demands the good-faith cooperation of all parties. It should, of course, be given a reasonable time to proceed."). Notwithstanding the confusion regarding the existence of the Tribal court, *see* Defs. Mem. of Law at 16 n. 13, Plaintiff fails to allege that she presented her dispute to the Tribal Court for adjudication.

Plaintiff has also not exhausted any available remedies with respect to the Tribal Council. Specifically, Plaintiff fails to allege in her Amended Complaint that she presented her claims to the Tribal Council at any time prior to initiating the present action. *See* Amended Compl. at ¶¶ 42–45. Moreover, in her Amended Complaint Plaintiff does not allege that the Tribal Council does not exist or that it is not a viable forum for raising her claims. Any difficulties Plaintiff allegedly experienced in obtaining information about the rules and procedures of the Tribal Court did not relieve Plaintiff of the requirement that she present her dispute to the Tribal Council. Because Plaintiff has not presented her claims to either the Tribal Court or the Tribal Council, she has failed to exhaust her remedies at the tribal level. Accordingly, this Court lacks jurisdiction with respect to Plaintiff's claims against Ransom.[8]

### III. Conclusion

For the foregoing reasons, it is hereby

**ORDERED**, that Defendants AHA and Ransom's motion to dismiss the Amended Complaint pursuant to FED. R. CIV. P. 12(b)(1) is **GRANTED**.

**IT IS SO ORDERED.**

---

**8.** The Court's dismissal of Plaintiff's claims against Ransom for failure to exhaust her tribal remedies applies equally to her claims against the AHA.