# GREAT PLAINS LENDING, LLC, ET AL. *v.*
# DEPARTMENT OF BANKING ET AL.
## (SC 20340)

Robinson, C. J., and Mullins, Kahn, Ecker, Keller and Vertefeuille, Js.

*Syllabus*

The plaintiffs, G Co., C Co., and S, appealed to the trial court from the
decision of the defendant Commissioner of Banking, who ordered the
plaintiffs to cease and desist and to pay certain civil penalties in connec-
tion with the commissioner's determination that G Co. and C Co. had
violated Connecticut's banking and usury laws by making consumer
loans to Connecticut residents without a license to do so. G Co. and C.
Co. were created pursuant to the laws of a federally recognized Indian
tribe, of which S is the chairman. S is also the secretary and treasurer
of both G Co. and C Co. The plaintiffs had moved to dismiss the adminis-
trative proceedings initiated by the defendant Department of Banking,
claiming that G Co. and C Co. were entitled to tribal sovereign immunity
as arms of the tribe and that S shared in that immunity because his
actions were undertaken on behalf of those entities in his official capac-
ity. The commissioner denied the plaintiffs' motion to dismiss, conclud-
ing that, because G Co. and C Co. had failed to demonstrate that they
were arms of the tribe, neither they nor S was entitled to tribal sovereign
immunity. After the commissioner issued final orders requiring, inter
alia, the plaintiffs to cease and desist from violating Connecticut law
in connection with their lending activities and S to pay a civil penalty,
the plaintiffs appealed to the trial court. The trial court determined that
G Co. and C Co. bore the burden of proving that they were arms of the
tribe entitled to tribal sovereign immunity, but the court disagreed with
the test the commissioner used to determine whether a business entity
should be considered an arm of an Indian tribe. Specifically, the test
the commissioner had applied focused on the financial relationship
between the tribe and the business entity. Instead, the trial court

Great Plains Lending, LLC *v.* Dept. of Banking

employed a multifactor test that considered not only the legal or organizational relationship between the tribe and the entity but also the functional aspects of the entity's financial relationship with the tribe and the entity's stated purpose. Under that functional test, the court determined that, although the evidence was sufficient for G Co. and C Co. to meet most of the various factors, the plaintiffs failed to show how the entities actually functioned in relation to their stated purpose. The court also concluded that the viability of the claims against S depended on whether G Co. and C Co. were arms of the tribe. Accordingly, the court rendered judgment sustaining the appeal and remanding the case to the commissioner for further proceedings to consider whether G Co. and C Co. satisfied the functional test. Thereafter, the plaintiffs appealed and the defendants cross appealed. *Held*:

1. The trial court correctly determined that G Co. and C Co. bore the burden of proving, by a preponderance of the evidence, that they were entitled to tribal sovereign immunity as arms of the tribe; allocating the burden of proof to the entity claiming immunity was consistent with the decisions of state and federal courts in arm of the tribe cases, as well as the standard employed by this court with respect to whether a corporate entity is entitled to assert a sovereign immunity defense as an arm of the state, and the entity claiming arm of the tribe status likely will have the best access to the evidence needed to assume that burden of proof.

2. The trial court applied an improper test for determining whether an entity is entitled to sovereign immunity as an arm of the tribe by requiring proof of how the entities functioned in relation to their stated purpose and incorrectly determined that further proceedings were required to determine whether G Co. was an arm of the tribe: this court concluded that whether an entity shares a tribe's sovereign immunity as an arm of the tribe is a determination to be made in light of the federal laws and policies underlying tribal sovereign immunity and in view of five specific factors, namely, the method of the entity's creation, the purpose of the entity, the structure, ownership and management of the entity, including the amount of control the tribe has over it, the tribe's intent with respect to sharing its sovereign immunity, and the financial relationship between the tribe and the entity; in the present case, all five factors supported the determination that G Co. was entitled, as a matter of law, to share in the tribe's sovereign immunity as an arm of the tribe, as the record demonstrated that G Co. was created under tribal law and was controlled by directors appointed by the tribe's governing council for the purpose of promoting tribal economic development and welfare, and there was a significant financial relationship between the tribe and G Co. such that withholding immunity would interfere with the tribe's self-governance and economic development; moreover, the minimal evidence in the record, consisting only of a certificate of license, the tribal resolution creating C Co., and certain conclusory statements contained in the affidavit of the tribe's vice chairman about the purpose and

Great Plains Lending, LLC *v.* Dept. of Banking

structure of C Co., was insufficient to conclude that C Co. was an arm of the tribe entitled to share in its sovereign immunity, and, accordingly the trial court correctly concluded that further proceedings were necessary to determine whether C Co. was an arm of the tribe.

3. The trial court correctly determined that S was immune from the civil penalty imposed on him but was not immune from the order of prospective injunctive relief in connection with his actions as an official of G Co.: tribal officials are entitled to an extension of tribal sovereign immunity if the tribe, rather than the individual officer, is the real party in interest and if the tribal official acted within the scope of his authority; in the present case, the department sought relief from S only nominally because of his policy-making role as a high ranking officer of the tribe and the entities, rather than as a result of his personal actions taken within the scope of his official capacity, and made only a conclusory and nominal allegation without referring to any specific actions taken by S, such that it was apparent that the tribe, rather than S, was the real party in interest and that S's actions were entirely within the scope of executing his duties as an officer of the tribe, G Co., and C Co., and, in the absence of any allegation that S acted beyond the scope of his authority, he was immune from the civil penalty imposed on him; moreover, tribal sovereign immunity does not extend to injunctive relief against tribal officers responsible for violating state law, and, therefore, S was not immune from the order enjoining him from violating Connecticut banking and usury laws.

Argued October 21, 2020—officially released May 20, 2021*

*Procedural History*

Appeal from the decision of the named defendant ordering the plaintiffs to cease and desist and to pay certain civil penalties and finding that the plaintiffs are not entitled to tribal sovereign immunity, brought to the Superior Court in the judicial district of New Britain, where the court, *Hon. Joseph M. Shortall*, judge trial referee, denied the defendants' motion to dismiss; thereafter, the case was tried to the court, *Hon. Joseph M. Shortall*, judge trial referee, who, exercising the powers of the Superior Court, rendered judgment vacating the orders of the named defendant that imposed certain financial penalties on the plaintiffs and remanding the case to the named defendant to hold an evidentiary

* May 20, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

Great Plains Lending, LLC *v.* Dept. of Banking

hearing to reconsider the issue of whether the plaintiffs are entitled to tribal sovereign immunity, from which the plaintiffs appealed and the defendants cross appealed. *Reversed in part*; *judgment directed in part*; *further proceedings*.

*Robert A. Rosette*, pro hac vice, with whom were *Linda L. Morkan* and, on the brief, *Jeffrey J. White* and *Saba Bazzazieh*, pro hac vice, for the appellants-appellees (plaintiffs).

*Clare E. Kindall*, solicitor general, with whom were *John Langmaid*, *Joseph J. Chambers* and *Robert J. Deichert*, assistant attorneys general, and, on the brief, *William Tong*, attorney general, for the appellees-appellants (defendants).

*Opinion*

ROBINSON, C. J. This appeal presents three significant issues of first impression with respect to whether a business entity shares an Indian tribe's sovereign immunity as an "arm of the tribe," as we consider (1) which party bears the burden of proving the entity's status as an arm of the tribe, (2) the legal standard governing that inquiry, and (3) the extent to which a tribal officer shares in that immunity for his or her actions in connection with the business entity. The plaintiffs, Great Plains Lending, LLC (Great Plains), American Web Loan, Inc., doing business as Clear Creek Lending (Clear Creek) (collectively, entities), and John R. Shotton, chairman of the Otoe-Missouria Tribe of Indians (tribe), a federally recognized tribe, appeal[1] from the judgment of the trial court sustaining their administrative appeal and remanding this case to the defendant Commissioner of Banking (commissioner) for further proceedings with respect to the plaintiffs'

[1] The plaintiffs appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

Great Plains Lending, LLC *v.* Dept. of Banking

entitlement to tribal sovereign immunity in administrative proceedings. On appeal, the plaintiffs claim that the trial court should have rendered judgment in their favor as a matter of law, insofar as it improperly (1) allocated the burden of proving entitlement to tribal sovereign immunity to the plaintiffs, (2) required proof of a functioning relationship between the entities and the tribe, and (3) failed to find Shotton immune in further administrative proceedings. The defendants, the commissioner and the Department of Banking (department), cross appeal and similarly challenge the legal standard adopted by the trial court and its decision to remand the case for further administrative proceedings. We conclude that the entity claiming arm of the tribe status bears the burden of proving its entitlement to that status under the test articulated by the United States Court of Appeals for the Tenth Circuit in *Breakthrough Management Group, Inc.* v. *Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1187 (10th Cir. 2010) (*Breakthrough*), cert. dismissed, 564 U.S. 1061, 132 S. Ct. 64, 180 L. Ed. 2d 932 (2011). We further conclude, as a matter of law, that Great Plains is an arm of the tribe and that Shotton, with respect to his capacity as an officer of Great Plains and the tribe, is entitled to tribal sovereign immunity from civil penalties but not injunctive relief. We also conclude, however, that there is insufficient evidence to support a conclusion that Clear Creek is an arm of the tribe as a matter of law, which requires a remand to the commissioner for further administrative proceedings. Accordingly, we reverse in part the judgment of the trial court.

The record reveals the following undisputed facts and procedural history. The tribe adopted the constitution of the Otoe-Missouria Tribe of Indians on February 4, 1984. In accordance with article IV, § 1, of the tribe's constitution, the Tribal Council (council) adopted the Otoe-Missouria Tribe of Indians Limited Liability Com-

Great Plains Lending, LLC *v.* Dept. of Banking

pany Act (LLC Act) and the Otoe-Missouria Tribe of Indians Corporation Act (Corporation Act) on May 4, 2011. Acting pursuant to the LLC Act, the council passed a resolution creating Great Plains on May 4, 2011. American Web Loan, Inc., was created in accordance with the Corporation Act on February 10, 2010, and did business as Clear Creek. Shotton, as chairman of the tribe, served as secretary and treasurer of both entities.

Following an investigation by the department, the commissioner found that the entities had violated Connecticut's banking and usury laws by making small consumer loans to Connecticut residents via the Internet without a license to do so. The commissioner also found that the interest rates on these loans exceeded those permitted under Connecticut's usury and banking laws. On October 24, 2014, the commissioner issued temporary cease and desist orders to the plaintiffs, orders that restitution be made to the Connecticut residents, and a notice of intent to issue permanent cease and desist orders, as well as to impose civil penalties. The plaintiffs timely filed a motion to dismiss the administrative proceedings for a lack of jurisdiction, asserting that (1) the entities are arms of the tribe entitled to tribal sovereign immunity, and (2) Shotton's involvement in the affairs of the entities was within his official capacity, entitling him to tribal sovereign immunity, as well. On January 6, 2015, the commissioner denied the motion to dismiss, concluding that the administrative action of the department was not a "suit" from which the plaintiffs enjoyed tribal sovereign immunity.

The plaintiffs filed an administrative appeal from the denial of the motion to dismiss in the trial court pursuant to the Uniform Administrative Procedure Act. See General Statutes § 4-183. The trial court, *Schuman, J.*, determined that "the better conclusion is that the tribe possesses sovereign immunity in [an] . . . administrative proceeding filed against [it] by a state commis-

sioner.'' The court then remanded the case to the commissioner pursuant to § 4-183 (k) in order to determine whether (1) the entities are ''arms of the tribe'' entitled to tribal sovereign immunity, and (2) Shotton, as a tribal official, shares in that immunity.

After remand, on June 14, 2017, the commissioner again denied the plaintiffs' motion to dismiss the administrative proceedings, concluding that the entities had failed to demonstrate they were arms of the tribe because ''Clear Creek simply did not submit any relevant evidence, and Great Plains failed to demonstrate that its relationship with the tribe is meaningful enough [for it] to be considered an arm of the tribe.'' Because the commissioner found that the entities were not arms of the tribe, the commissioner further concluded that Shotton was not entitled to tribal sovereign immunity. The commissioner thereafter issued final orders requiring the plaintiffs (1) to ''cease and desist from violating two specified sections of part III of chapter 668 of the General Statutes relating to 'small loan lending and related activities,' ''[2] and (2) to ''pay civil penalties to the department in the following amounts: Great Plains, $700,000; Clear Creek, $100,000; [Shotton], $700,000.''

Pursuant to § 4-183 (a), the plaintiffs appealed from the commissioner's final orders to the trial court. The trial court, *Hon. Joseph M. Shortall*, judge trial referee,[3] first determined that the entities bore the burden of demonstrating that they were arms of the tribe entitled to tribal sovereign immunity. In so concluding, the court

---

[2] Specifically, the commissioner ordered the plaintiffs to cease and desist from violating General Statutes (Rev. to 2015) §§ 36a-555 (1) and (2) and 36a-573 (a). As the trial court noted, No. 16-65, §§ 19 through 36, of the 2016 Public Acts ''extensively [revised] and reorganized the statutes regarding small loan lending. The comparable prohibitions now appear in General Statutes §§ 36a-556 and 36a-558.''

[3] Unless otherwise noted, all subsequent references to the trial court are to Judge Shortall.

Great Plains Lending, LLC *v.* Dept. of Banking

employed the analysis from *Rocky Hill* v. *SecureCare Realty, LLC*, 315 Conn. 265, 105 A.3d 857 (2015), with respect to corporate entities that claim state sovereign immunity from suit as an ''arm of the state . . . .'' (Internal quotation marks omitted.) Id., 279. The court then determined that the commissioner improperly relied on the finance oriented test outlined in *Sue/Perior Concrete & Paving, Inc.* v. *Lewiston Golf Course Corp.*, 24 N.Y.3d 538, 546–47, 25 N.E.3d 928, 2 N.Y.S.3d 15 (2014) (*Sue/Perior*), in finding that the entities were not arms of the tribe. Instead, the trial court deemed the multifactor test articulated in *People ex rel. Owen* v. *Miami Nation Enterprises*, 2 Cal. 5th 222, 236, 386 P.3d 357, 211 Cal. Rptr. 3d 837 (2016) (*Miami Nation*), to be the proper legal standard. Upon review of the record, the court concluded that, although the evidence presented by the plaintiffs was sufficient to meet most of the factors outlined in *Miami Nation*, it nevertheless was not sufficient to establish the entities' ultimate status as arms of the tribe because the plaintiffs had failed to show how the entities actually *functioned* in relation to their stated purpose.[4] The court further concluded that Shotton's liability ''rises and falls with . . . whether [the entities] are arms of the tribe . . . .'' Therefore, the trial court rendered judgment sustaining the appeal and remanded the case to the commissioner pursuant to § 4-183 (j) in order for the plaintiffs to ''submit evidence addressing these practical considerations to support their claim of tribal sovereign immunity.'' This appeal and cross appeal followed.[5]

[4] In requiring a functional inquiry, the trial court followed the California Supreme Court's observation in *Miami Nation* that ''it is common sense that if an entity provides a miniscule percentage of its revenue to the tribe, and the tribe is barely involved, the entity cannot be said to stand in the place of the tribe. Moreover, if a tribe retains only a minimal percentage of the profits from the enterprise, it would appear that the enterprise may not be truly controlled by the tribe.'' (Internal quotation marks omitted.) *People ex rel. Owen* v. *Miami Nation Enterprises*, supra, 2 Cal. 5th 249.

[5] We note that a remand to an agency pursuant to § 4-183 (j) is a final judgment for purposes of appeal. See, e.g., *Tilcon Connecticut, Inc.* v. *Com-*

Great Plains Lending, LLC *v.* Dept. of Banking

On appeal, the plaintiffs claim that the trial court improperly (1) allocated to the entities the burden of proving entitlement to tribal sovereign immunity, (2) applied the tribal sovereign immunity test outlined in *Miami Nation*, (3) failed to deem Shotton entitled to tribal sovereign immunity, and (4) remanded the case to the commissioner rather than concluding that they were entitled to tribal sovereign immunity as a matter of law. In their cross appeal, the defendants argue that the trial court improperly (1) rejected the *Sue/Perior* test used by the commissioner, (2) found that the viability of the department's claims against Shotton depended on whether the entities were arms of the tribe, and (3) remanded the case to the commissioner for further proceedings. We address each claim in turn, setting forth additional relevant facts and procedural history as necessary.

I

Before we consider the parties' claims in detail, we note the following general principles concerning the law of tribal sovereign immunity. A claim of tribal sovereign immunity "implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss. . . . A determination regarding a trial court's subject matter jurisdiction is a question of law." (Internal quotation marks omitted.) *Lewis* v. *Clarke*, 320 Conn. 706, 710, 135 A.3d 677 (2016), rev'd on other grounds, U.S. , 137 S. Ct. 1285, 197 L. Ed. 2d 631 (2017). Accordingly, "[o]ur review of the court's ultimate legal conclusion[s] and resulting [determination] of the motion to dismiss will be de novo." (Internal quotation marks omitted.) *Gold* v. *Rowland*, 296 Conn. 186, 200, 994 A.2d 106 (2010).

Our analysis is guided by core federal Indian law principles that are well established by the decisions of

*missioner of Environmental Protection*, 317 Conn. 628, 646–47, 119 A.3d 1158 (2015).

Great Plains Lending, LLC *v.* Dept. of Banking

the United States Supreme Court. "Indian tribes are distinct, independent political communities, retaining their original natural rights in matters of local self-government. . . . Although no longer possessed of the full attributes of sovereignty, they remain a separate people, with the power of regulating their internal and social relations." (Citations omitted; internal quotation marks omitted.) *Santa Clara Pueblo* v. *Martinez*, 436 U.S. 49, 55, 98 S. Ct. 1670, 56 L. Ed. 2d 106 (1978). "Indian tribes are 'domestic dependent nations' that exercise inherent sovereign authority over their members and territories." *Oklahoma Tax Commission* v. *Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 509, 111 S. Ct. 905, 112 L. Ed. 2d 1112 (1991), quoting *Cherokee Nation* v. *Georgia*, 30 U.S. (5 Pet.) 1, 17, 8 L. Ed. 25 (1831). Given tribes' sovereign status, they possess "common-law immunity from suit traditionally enjoyed by sovereign powers." *Santa Clara Pueblo* v. *Martinez*, supra, 58. Such immunity extends to administrative agency actions. See, e.g., *Cash Advance & Preferred Cash Loans* v. *State ex rel. Suthers*, 242 P.3d 1099, 1104 (Colo. 2010) ("tribal sovereign immunity applies to state investigatory enforcement actions"). Tribes retain tribal sovereign immunity unless it is abrogated by Congress or waived by the tribe. See, e.g., *Michigan* v. *Bay Mills Indian Community*, 572 U.S. 782, 788, 134 S. Ct. 2024, 188 L. Ed. 2d 1071 (2014) (*Bay Mills*); *Kiowa Tribe* v. *Mfg. Technologies, Inc.*, 523 U.S. 751, 754, 118 S. Ct. 1700, 140 L. Ed. 2d 981 (1998).

Tribal sovereign immunity applies to tribal activities that occur both inside and outside of "Indian country."[6]

---

[6] For purposes of this opinion, we note that "Indian country" is a "term of art used to identify territory, specifically, lands on which tribal laws and customs—as well as federal laws relating to Indians—are applicable. Congress has defined Indian country as including three types of land: 'land within the limits of any Indian reservation,' 'dependent Indian communities,' and 'Indian allotments.' " (Footnote omitted.) R. Duncan & C. Martenson, "I Can See Clearly Now: The EPA's Authority to Regulate Indian Country Under the Clean Air Act," 41 Wm. Mitchell L. Rev. 488, 492 (2015). "Indian

Great Plains Lending, LLC *v.* Dept. of Banking

See, e.g., *Michigan* v. *Bay Mills Indian Community*, supra, 572 U.S. 790; *Bassett* v. *Mashantucket Pequot Tribe*, 204 F.3d 343, 357 (2d Cir. 2000). Regardless of where the tribal activity takes place, tribal sovereign immunity applies in civil or administrative actions seeking damages or injunctive relief with respect to both the commercial and governmental conduct of the tribe. See *Kiowa Tribe* v. *Mfg. Technologies, Inc.*, supra, 523 U.S. 760; *Imperial Granite Co.* v. *Pala Band of Mission Indians*, 940 F.2d 1269, 1271 (9th Cir. 1991); Cohen's Handbook of Federal Indian Law (N. Newton et al. eds., 2012) § 7.05 [1] [a], p. 637.

In the present case, it is undisputed that the tribe itself is entitled to tribal sovereign immunity. The disputed issue is whether the plaintiffs are entitled to share in that immunity under the doctrine that extends tribal sovereign immunity to business entities or enterprises that act as arms of the tribe. See, e.g., *New York* v. *Golden Feather Smoke Shop, Inc.*, Docket No. 08-CV-3966 (CBA), 2009 WL 705815, *5 (E.D.N.Y. March 16, 2009); *People ex rel. Owen* v. *Miami Nation Enterprises*, supra, 2 Cal. 5th 250. Whether a business entity is an arm of the tribe entitled to share in tribal sovereign immunity depends not on "whether the activity may be characterized as a business . . . but [on] whether the entity acts as an arm of the tribe so that its activities are properly deemed to be those of the tribe." *Allen* v. *Gold Country Casino*, 464 F.3d 1044, 1046 (9th Cir. 2006), cert. denied, 549 U.S. 1231, 127 S. Ct. 1307, 167 L. Ed. 2d 119 (2007). Although the United States Supreme

country" is distinct from "Indian lands," which are defined as "lands within Indian reservations and any lands held in trust or restricted status by the United States for the benefit of a tribe or individual Indians . . . ." Cohen's Handbook of Federal Indian Law (N. Newton et al. eds., 2012) § 3.04 [1], p. 184. Finally, land not held in trust by the federal government is often referred to as "tribal land," which generally denotes direct tribal ownership of the land rather than a relationship to the land through allotment, trust, or treaty. Id., § 1.03 [6] [b], p. 61.

Great Plains Lending, LLC *v.* Dept. of Banking

Court has recognized that wholly owned tribal corporations may be considered arms of the tribe, that court has not yet articulated a framework for how to make such a determination. See *Williams* v. *Big Picture Loans, LLC*, 929 F.3d 170, 176 (4th Cir. 2019), citing *Inyo County* v. *Paiute-Shoshone Indians of the Bishop Community of the Bishop Colony*, 538 U.S. 701, 704, 705 n.1, 123 S. Ct. 1887, 155 L. Ed. 2d 933 (2003). Determining the proper framework for the arm of the tribe inquiry is similarly an issue of first impression in Connecticut and is the central issue in this appeal.

II

As an initial matter, the parties dispute the proper allocation of the burden of proof in the arm of the tribe analysis. The plaintiffs rely on the Colorado Supreme Court's decision in *Cash Advance & Preferred Cash Loans* v. *State ex rel. Suthers*, supra, 242 P.3d 1099, and contend that the trial court improperly relied on our decision in *Rocky Hill* v. *SecureCare Realty, LLC*, supra, 315 Conn. 265, for the proposition that the "burden of proving by a preponderance of the evidence that [the tribal entities] are entitled to tribal sovereign immunity, i.e., the risk of nonpersuasion, is on the [entities], just as it is on corporate entities that claim entitlement to the state's sovereign immunity from suit as 'arms of the state.' " In response, the defendants argue that the trial court correctly relied on arm of the state analyses, such as that in *SecureCare Realty, LLC*, in concluding that the entities bore the burden of proving their arm of the tribe status. We agree with the defendants and conclude that the entity claiming arm of the tribe status bears the burden of proving its entitlement to that status.

Several state and federal courts have addressed the burden of proof when determining arm of the tribe status, and, like the trial court in the present case, they

124 NOVEMBER, 2021 339 Conn. 112

Great Plains Lending, LLC *v.* Dept. of Banking

have relied on arm of the state analyses in allocating the burden of proof to the entity. See, e.g., *Williams* v. *Big Picture Loans, LLC*, supra, 929 F.3d 176; *People ex rel. Owen* v. *Miami Nation Enterprises*, supra, 2 Cal. 5th 240–44. Those courts have consistently concluded that, although a tribe itself does not bear the ultimate burden of proving tribal sovereign immunity, an entity claiming to be an arm of that tribe bears the burden of demonstrating the existence of that relationship and the entity's ultimate entitlement to share in tribal sovereign immunity. See *Williams* v. *Big Picture Loans, LLC*, supra, 177 ("Unlike the tribe itself, an entity should not be given a presumption of immunity until it has demonstrated that it is in fact an extension of the tribe. Once [an entity] has done so, the burden to prove that immunity has been abrogated or waived would then fall to the plaintiff."); *Gristede's Foods, Inc.* v. *Unkechuage Nation*, 660 F. Supp. 2d 442, 466 (E.D.N.Y. 2009) ("the burden of proof for an entity asserting immunity as an arm of a sovereign tribe is on the entity to establish that it is, in fact, an arm of the tribe"); *People ex rel. Owen* v. *Miami Nation Enterprises*, supra, 236 ("an entity asserting immunity bears the burden of showing by a preponderance of the evidence that it is an 'arm of the tribe' entitled to tribal immunity"). Put differently, once the entity proves by a preponderance of the evidence that it is an arm of the tribe, the burden shifts back to the party seeking to overcome tribal sovereign immunity to prove that such immunity has been waived or abrogated as a matter of law.[7] See *Williams* v. *Big*

---

[7] We disagree with the plaintiffs' reliance on the Colorado Supreme Court's decision in *Cash Advance & Preferred Cash Loans* v. *State ex rel. Suthers*, supra, 242 P.3d 1099, for the proposition that the defendants bear the burden of proving that the entities are not arms of the tribe. In that case, the Colorado Supreme Court held that an assertion of tribal sovereign immunity is jurisdictional in nature and, therefore, properly raised in a motion to dismiss. Id., 1112–13. In making that determination, the court also stated that "the state bears the burden of proving, by a preponderance of the evidence, that [the tribal entities] are not entitled to tribal sovereign immunity." Id., 1113. This statement, however, referred to the state's obligation

Great Plains Lending, LLC *v.* Dept. of Banking

*Picture Loans*, *LLC*, supra, 176–77; *Breakthrough Management Group, Inc.* v. *Chukchansi Gold Casino & Resort*, supra, 629 F.3d 1196 and n.17; *Gristede's Foods, Inc.* v. *Unkechuage Nation*, supra, 465; *Cash Advance & Preferred Cash Loans* v. *State ex rel. Suthers*, supra, 242 P.3d 1113–14.

We disagree with the plaintiffs' argument that placing the burden of proving arm of the tribe status on the business entity encroaches on tribal sovereignty. An otherwise private entity seeking the benefit of tribal sovereign immunity is distinct from the tribe itself, especially because tribal sovereign immunity "is a strong tonic . . . ." *People ex rel. Owen* v. *Miami Nation Enterprises*, supra, 2 Cal. 5th 244. Furthermore, consistent with the arm of the state analysis discussed in decisions such as *Rocky Hill* v. *SecureCare Realty, LLC*, supra, 315 Conn. 279,[8] placing the burden of proof on the entity claiming entitlement to tribal sovereign immu-

to prove the existence of jurisdiction in spite of tribal sovereign immunity, not to whether the business entities at issue in that case were arms of the tribe in the first place. After concluding that the state bore the burden of demonstrating jurisdiction, the court engaged in an analysis as to whether the state had proven the waiver of tribal sovereign immunity. See id., 1114. Significantly, the court engaged in this analysis only *after* determining the proper standard to deem an entity an arm of the tribe. See id., 1109–11.

[8] Although placing the burden on the entity is consistent with Connecticut's arm of the state analysis in *Rocky Hill* v. *SecureCare Realty, LLC*, supra, 315 Conn. 279, we note that the ultimate issue of tribal sovereign immunity itself "differs from state [sovereign immunity] in important respects." (Internal quotation marks omitted.) *People ex rel. Owen* v. *Miami Nation Enterprises*, supra, 2 Cal. 5th 240; see also *Idaho* v. *Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 268, 117 S. Ct. 2028, 138 L. Ed. 2d 438 (1997) (tribal immunity is distinct from state immunity because "the plan of the [constitutional] [c]onvention did not surrender Indian tribes' immunity for the benefit of the [s]tates"); *Blatchford* v. *Native Village of Noatak*, 501 U.S. 775, 782, 111 S. Ct. 2578, 115 L. Ed. 2d 686 (1991) ("Indian tribes enjoy immunity against suits by [s]tates . . . as it would be absurd to suggest that the tribes surrendered immunity in a [constitutional] convention to which they were not even parties"); *People ex rel. Owen* v. *Miami Nation Enterprises*, supra, 240 (noting that states have consented to suit by other states but that tribes have never agreed to so limit their tribal sovereign immunity).

Great Plains Lending, LLC *v.* Dept. of Banking

nity as an arm of the tribe is appropriate because, pragmatically, the entity claiming such immunity will have the best access to the evidence necessary to prove the existence of that relationship. See *Williams* v. *Big Picture Loans, LLC*, supra, 929 F.3d 177 ("as a practical matter, it makes sense to place the burden on [business entities] . . . as they will likely have the best access to the evidence needed to demonstrate immunity"); *New York* v. *Golden Feather Smoke Shop, Inc.*, supra, 2009 WL 705815, *4 ("the issue of whether an entity is an arm of the tribe may rest on nuances in the entity's ownership and control structure, corporate purpose, and relationship with the tribal government"). Having determined that the entities bear the burden of demonstrating they are arms of the tribe, we next turn to the appropriate legal standard for determining whether they are arms of the tribe.

III

A

With respect to the standard that guides the arm of the tribe analysis, the plaintiffs argue that the trial court properly rejected the nine factor test articulated in *Sue/Perior Concrete & Paving, Inc.* v. *Lewiston Golf Course Corp.*, supra, 24 N.Y.3d 546–47, but nevertheless improperly adopted the test outlined in *People ex rel. Owen* v. *Miami Nation Enterprises*, supra, 2 Cal. 5th 246–47. Instead, the plaintiffs assert that the trial court should have relied on the *Breakthrough* test; see *Breakthrough Management Group, Inc.* v. *Chukchansi Gold Casino & Resort*, supra, 629 F.3d 1187; to determine whether they are entitled to arm of the tribe status. In response, the defendants argue that the trial court improperly rejected the *Sue/Perior* test on which the commissioner relied, and, alternatively, that the trial court correctly applied the five factor test focusing on the function of the relationship between the entity and

Great Plains Lending, LLC *v.* Dept. of Banking

the tribe, as set forth in *Miami Nation*, in determining that the entities are not arms of the tribe. We agree with the plaintiffs and conclude that the *Breakthrough* test governs the arm of the tribe inquiry.

A series of federal and state cases have attempted to outline an approach to determining whether an entity is an arm of the tribe. A review of the evolution of that line of cases is helpful in considering the parties' arguments in this appeal. In 2010, the United States Court of Appeals for the Tenth Circuit outlined a six factor test for considering arm of the tribe status in *Breakthrough Management Group, Inc.* v. *Chukchansi Gold Casino & Resort*, supra, 629 F.3d 1173. In *Breakthrough*, the court identified six factors to determine whether a relationship between a tribe and entity was close enough to allow that entity to share the tribe's sovereign immunity as an arm of the tribe, namely, (1) the method of creation of the economic entities, (2) the purpose of those entities, (3) the structure, ownership, and management of the entities, including the amount of control the tribe has over them, (4) the tribe's intent with respect to sharing its sovereign immunity, (5) "the financial relationship between the tribe and the entities," and (6) the "policies underlying tribal sovereign immunity and its connection to tribal economic development, and whether those policies are served by granting immunity to the economic entities." Id., 1187. The *Breakthrough* test has been implemented by a majority of the federal courts that have considered this issue. See, e.g., *Williams* v. *Big Picture Loans, LLC*, supra, 929 F.3d 177; *White* v. *University of California*, 765 F.3d 1010, 1025 (9th Cir. 2014), cert. denied sub nom. *White* v. *Regents of the University of California*, 577 U.S. 1124, 136 S. Ct. 983, 194 L. Ed. 2d 13 (2016); *Allen* v. *Gold Country Casino*, supra, 464 F.3d 1046–47; *Solomon* v. *American Web Loan*, 375 F. Supp. 3d 638, 653 (E.D. Va. 2019); *Johnson* v. *Harrah's Kansas*

Great Plains Lending, LLC *v.* Dept. of Banking

*Casino Corp.*, Docket No. 04-4142-JAR, 2006 WL 463138, *3–8 (D. Kan. February 23, 2006). But see *Somerlott* v. *Cherokee Nation Distributors, Inc.*, 686 F.3d 1144, 1149–50 (10th Cir. 2012) (declining to apply *Breakthrough* test when entity was incorporated under state law).

Subsequently, in 2014, the New York Court of Appeals articulated in *Sue/Perior* a slightly different version of the nine factor test that it had originally announced in 1995. See *Sue/Perior Concrete & Paving, Inc.* v. *Lewiston Golf Course Corp.*, supra, 24 N.Y.3d 546–47, citing *In re Ransom* v. *St. Regis Mohawk Education & Community Fund, Inc.*, 86 N.Y.2d 553, 559–60, 658 N.E.2d 989, 635 N.Y.S.2d 116 (1995).[9] In its analysis, the court focused closely on the financial relationship between the tribe and entity. See *Sue/Perior Concrete & Paving, Inc.* v. *Lewiston Golf Course Corp.*, supra, 549–51.

In 2016, the California Supreme Court rejected the emphasis that the New York Court of Appeals placed on the financial relationship between the tribe and the entity in *Sue/Perior*. See *People ex rel. Owen* v. *Miami*

---

[9] "Although no set formula is dispositive, in determining whether a particular tribal organization is an 'arm' of the tribe entitled to share the tribe's immunity from suit, courts generally consider such factors as whether: [1] the entity is organized under the tribe's laws or constitution rather than [f]ederal law; [2] the organization's purposes are similar to or serve those of the tribal government; [3] the organization's governing body is comprised mainly of tribal officials; [4] the tribe has legal title or ownership of property used by the organization; [5] tribal officials exercise control over the administration or accounting activities of the organization; and [6] the tribe's governing body has power to dismiss members of the organization's governing body. . . . More importantly, courts will consider whether [7] the corporate entity generates its own revenue, whether [8] a suit against the corporation will impact the tribe's fiscal resources, and whether [9] the subentity has the 'power to bind or obligate the funds of the [tribe]' . . . . The vulnerability of the tribe's coffers in defending a suit against the subentity indicates that the real party in interest is the tribe." (Citations omitted.) *In re Ransom* v. *St. Regis Mohawk Education & Community Fund, Inc.*, 86 N.Y. 2d 553, 559–60, 658 N.E.2d 989, 635 N.Y.S.2d 116 (1995).

Great Plains Lending, LLC *v.* Dept. of Banking

*Nation Enterprises*, supra, 2 Cal. 5th 247. *Miami Nation* largely follows the *Breakthrough* test, with two significant differences. First, the California Supreme Court correctly noted that the sixth factor in *Breakthrough*, namely, whether federal Indian law policies underlying tribal sovereign immunity and its connection to tribal economic development are served by granting immunity to the economic entities, overlaps significantly with the first five factors; rather than serving as an independent factor, such policies should color the court's analysis of each of the other factors. Id., 245.

Second, the California Supreme Court supplemented the *Breakthrough* test by implementing a functional inquiry when considering both the entity's financial relationship with a tribe and the entity's stated purpose. The court explained: "[T]his test takes into account both formal and functional considerations—in other words, not only the legal or organizational relationship between the tribe and the entity, but also the practical operation of the entity in relation to the tribe." Id., 236. The court emphasized considering "the extent to which the entity *actually promotes* tribal self-governance . . . ." (Emphasis added.) Id., 245. In considering the entity's purpose, the court in *Miami Nation* went further than considering its *stated* purpose by examining the extent to which the entity was *achieving* that goal. Id., 246–47. The court explained that the "fit between [the] stated purpose and practical execution need not be exact, but the closer the fit, the more it will weigh in favor of immunity." Id., 247. The court noted that an entity with the stated purpose of furthering tribal economic development could demonstrate such purpose by demonstrating the jobs created for tribal members or the revenue generated for the tribe. Id. This factor, however, may weigh against establishing arm of the tribe status when an entity is engaging in activities unrelated to its stated goals or operating mainly to

enrich individuals outside of the tribe. Id. The California court justified this additional inquiry by highlighting that "[t]hese functional considerations illuminate the degree to which imposition of liability on the entity would practically impair tribal self-governance." Id., 245.

The United States Court of Appeals for the Fourth Circuit recently declined to engage as directly with the functional aspects of an entity's stated purpose and financial relationship. See *Williams* v. *Big Picture Loans, LLC,* supra, 929 F.3d 180. The Fourth Circuit stated that the functional analysis demands "a breakdown of exactly what percentage of the [t]ribe's budget went to each of [the tribal] activities [the entity's revenue had funded] and exactly what percentage of the funding for these activities constituted [entity] revenue. Such a requirement is at odds with policy considerations of tribal self-governance and economic development." Id.

We agree with the Fourth Circuit that an exacting inquiry into the operation of tribal treasuries goes too far. Although evidence of an entity's stated purpose may well include a showing of function, and such a showing would likely strengthen an entity's claim to arm of the tribe status, we would not mandate this additional functional inquiry, specifically, whether "the entity actually promotes tribal self-governance"; *People ex rel. Owen* v. *Miami Nation Enterprises*, supra, 2 Cal. 5th 245; because we consider the inquiry unworkable and potentially inimical to the principle of self-governance underlying tribal immunity.

First, we understand the functional inquiry prescribed by *Miami Nation* to require an analysis of the *tribe's* finances, as opposed to those of the entity; in essence, we understand it to ask whether the entity serves as a successful business venture for the tribe.

Great Plains Lending, LLC *v.* Dept. of Banking

This becomes a nebulous, subjective, difficult to apply inquiry that may overlook or underestimate the value of certain business ventures to the tribe. For example, the inquiry might lead to the conclusion that fledgling business entities without a steady revenue stream are less deserving of tribal sovereign immunity than established ventures, potentially depriving tribal business entities of immunity during an especially vulnerable period at the beginning of the venture. Second, to the extent that the inquiry calls for an examination of the finances of the tribe, rather than those of the entity seeking the tribe's immunity, it could lead to an improper incursion into the financial affairs of a coordinate sovereign. See *Williams* v. *Big Picture Loans, LLC*, supra, 929 F.3d 179 ("the promotion of tribal self-governance . . . counsels against courts demanding exacting information about the minutiae of a tribe's budget"); *Altheimer & Gray* v. *Sioux Mfg. Corp.*, 983 F.2d 803, 815 (7th Cir.) ("economic independence is the foundation of a tribe's self-determination"), cert. denied, 510 U.S. 1019, 114 S. Ct. 621, 126 L. Ed. 2d 585 (1993).

Accordingly, like the Fourth, Ninth, and Tenth Circuits, we adopt the first five *Breakthrough* factors to analyze, in light of federal Indian law and policy, whether the entities constitute arms of the tribe for purposes of tribal sovereign immunity. See *Williams* v. *Big Picture Loans, LLC*, supra, 929 F.3d 177. We will consider the extent to which granting arm of the tribe status furthers the purposes of tribal sovereign immunity throughout the following analysis. See id. Considering the five factors outlined in *Breakthrough* and *Miami Nation*, the trial court in this case found sufficient evidence to satisfy each factor but ultimately determined that the evidence was insufficient to meet the additional functional inquiry prescribed by *Miami Nation*. We disagree with the trial court's reasoning to the extent

that it focused on the functional aspect of the tribe's relationship with the entities. Reviewing the trial court's decision de novo, we instead conclude that Great Plains is an arm of the tribe as a matter of law and is entitled to tribal sovereign immunity but that there is not enough evidence to conclude that Clear Creek is an arm of the tribe.

B

Having identified the proper standard for determining whether an entity is an arm of the tribe entitled to share in tribal sovereign immunity, we now apply those five factors to the factual record in this case and consider each entity in turn.

1

Method of Creation

The first factor, "the method of creation" of the entity, focuses on the law under which the entity was formed. (Internal quotation marks omitted.) *Williams* v. *Big Picture Loans, LLC*, supra, 929 F.3d 177; see, e.g., *Breakthrough Management Group, Inc.* v. *Chukchansi Gold Casino & Resort*, supra, 629 F.3d 1191–92; *People ex rel. Owen* v. *Miami Nation Enterprises*, supra, 2 Cal. 5th 245–46. Formation under tribal law weighs in favor of immunity. See *Breakthrough Management Group, Inc.* v. *Chukchansi Gold Casino & Resort*, supra, 1191. "The circumstances under which the entity's formation occurred, including whether the tribe initiated or simply absorbed an operational commercial enterprise, are also relevant." *People ex rel. Owen* v. *Miami Nation Enterprises*, supra, 246.

Here, as described in the affidavit of Ted Grant, vice chairman of the tribe, the tribe's constitution grants its council the power to "make all laws and ordinances for the benefit of the [t]ribe." It is undisputed that the entities at issue in this case were created under tribal

Great Plains Lending, LLC *v.* Dept. of Banking

law, namely, the LLC Act and the Corporation Act. The record contains tribal resolutions creating the entities,[10] along with tribal certificates of license for both entities. Because both entities were created under tribal law on the tribe's own initiative, this factor weighs in favor of tribal sovereign immunity for both entities. See *Williams* v. *Big Picture Loans*, *LLC*, supra, 929 F.3d 177; *Breakthrough Management Group*, *Inc.* v. *Chukchansi Gold Casino & Resort*, supra, 629 F.3d 1191–92.

2

Purpose

The second factor "incorporates both the stated purpose for which the [e]ntities were created as well as evidence related to that purpose." *Williams* v. *Big Picture Loans*, *LLC*, supra, 929 F.3d 178; see, e.g., *Breakthrough Management Group*, *Inc.* v. *Chukchansi Gold Casino & Resort*, supra, 629 F.3d 1192–93. "The stated purpose need not be purely governmental to weigh in favor of immunity as long as it relates to broader goals of tribal self-governance." *Williams* v. *Big Picture Loans*, *LLC*, supra, 178. The entity's purpose is relevant because "[f]ew tribes have any significant tax base. Tribal business enterprises may be the only means by which a tribe can raise revenues—and thus such enterprises may be essential to the fulfillment of the tribe's governmental obligations." (Internal quotation marks omitted.) *People ex rel. Owen* v. *Miami Nation Enterprises*, supra, 2 Cal. 5th 247–48, quoting C. Struve, "Tribal Immunity and Tribal Courts," 36 Ariz. St. L.J. 137, 169 (2004).

Here, Grant describes in his affidavit the stated purpose of both entities as "to advance the [t]ribe's economic development and to aid in addressing issues of

--------

[10] We note that the tribal ordinance created American Web Loan, Inc., which is a corporate entity that does business as Clear Creek.

public health, safety, and welfare.'' Grant's affidavit is consistent with and supported by the operating agreement for Great Plains, which provides that the tribe "desires to form a limited liability company for the purpose of carrying on a for-profit business and to further the economic goals and initiatives of the [t]ribe." By contrast, the record does not contain articles of incorporation or bylaws for American Web Loan, Inc., doing business as Clear Creek; the only evidence of Clear Creek's stated purpose is the council's resolution creating the entity, which states its determination "that the best interest of the [tribe] is best served by the adoption of the Otoe-Missouria Tribe American Web Loan Act . . . ."

The defendants urge us to uphold the trial court's decision to require, consistent with the California Supreme Court's reasoning in *Miami Nation*, a further showing of how the stated purpose is functioning in actuality in order to satisfy this factor. They claim that the record is insufficient to demonstrate that the entities have achieved their purpose. However, *Miami Nation* is distinguishable because, as the Fourth Circuit noted, the evidence in that case "indicated that the tribe received barely any revenue, and the entities could not identify the percentage of profits from the lending operations that flowed to the tribe or how those profits were used.'' *Williams* v. *Big Picture Loans, LLC*, supra, 929 F.3d 181; see *People ex rel. Owen* v. *Miami Nation Enterprises*, supra, 2 Cal. 5th 254–55. Furthermore, the entities in *Miami Nation* were engaging in profit sharing with apparently nontribal members, whereas the record in the present case indicates that both entities were created under tribal law for the sole purpose of generating revenue for the tribe, thus promoting tribal self-governance and economic development. See *People ex rel. Owen* v. *Miami Nation Enterprises*, supra, 254.

Great Plains Lending, LLC *v.* Dept. of Banking

The record in the present case does not indicate, and the defendants do not allege, that proceeds from Great Plains or Clear Creek are going to nontribal members. Indeed, both Grant's affidavit and the operating agreement for Great Plains indicate that the tribe, as the sole member, is the sole recipient of any profits generated by Great Plains and that the purpose of Great Plains is to promote tribal self-governance and economic development. Imposing a more exacting standard that requires the opening and examination of a tribe's financial books and records in order to show the extent to which a tribal business enterprise is functionally achieving its purpose, in the absence of any indication that such proceeds are flowing to nontribal members or that the entities serve a purpose other than the one asserted by the tribe, would infringe too greatly on tribal self-governance and self-determination. See *Williams* v. *Big Picture Loans, LLC*, supra, 929 F.3d 180 ("[s]uch a requirement [of breaking down a tribe's budget into percentages] is at odds with policy considerations of tribal self-governance and economic development"). Because the stated purpose of Great Plains is to advance the tribe's "economic development to aid in addressing issues of public health, safety, and welfare," and the record provides evidence of such purpose in the tribal law and resolution creating Great Plains, as well as its operating agreement, with no evidence supporting a conclusion to the contrary, we conclude that this factor weighs in favor of immunity for Great Plains.

The record, however, does not contain evidence of Clear Creek's stated purpose beyond the resolution creating American Web Loan, Inc., and Grant's affidavit containing a single, conclusory statement. The plaintiffs bear the burden of establishing their arm of the tribe status, and, without further description or documentation linking the entity's stated purpose to the furtherance of tribal economic development, we conclude that

there is insufficient evidence for this factor to weigh in favor of finding Clear Creek to be an arm of the tribe. See, e.g., *Buell Industries, Inc.* v. *Greater New York Mutual Ins. Co.*, 259 Conn. 527, 557, 791 A.2d 489 (2002) ("conclusory affidavits, even from expert witnesses, do not provide a basis on which to deny [summary judgment motions]" (internal quotation marks omitted)); see also id., 557–58 (because "the plaintiff properly had the burden to establish the existence of these facts, it cannot avoid summary judgment . . . by the mere assertion of a conclusion").

3

Control

The third factor "examines the structure, ownership, and management of the entities, 'including the amount of control the [t]ribe has over the entities.' " *Williams* v. *Big Picture Loans, LLC*, supra, 929 F.3d 182, quoting *Breakthrough Management Group, Inc.* v. *Chukchansi Gold Casino & Resort*, supra, 629 F.3d 1191. In determining the existence of tribal control, courts consider "the entities' formal governance structure, the extent to which the entities are owned by the tribe, and the day-to-day management of the entities." *Williams* v. *Big Picture Loans, LLC*, supra, 182; see *People ex rel. Owen* v. *Miami Nation Enterprises*, supra, 2 Cal. 5th 247 (noting that control of entity does not require control of all business minutiae). The extent to which a tribe is actively involved in directing or overseeing the operation of the entity will affect the extent to which this factor weighs in favor of immunity. See *People ex rel. Owen* v. *Miami Nation Enterprises*, supra, 247. In considering the tribe's control over an entity, courts consider the totality of the circumstances to determine whether the tribe has sufficient operational control to

Great Plains Lending, LLC *v.* Dept. of Banking

render an entity an arm of the tribe.[11] See *Williams* v. *Big Picture Loans, LLC*, supra, 183 (outsourcing of entity's day-to-day management did not outweigh other factors weighing in favor of immunity).

The trial court found the tribe's control of the entities evident from Grant's affidavit, which provides that Shotton, who is the chairman of the tribe, serves as secretary and treasurer of both entities and is responsible for "certain oversight" of the entities. Grant also states that both entities' officers are appointed by the council and may be removed by the council with or without cause. The operating agreement of Great Plains further provides that its board of directors is appointed by the council and any board member may be removed by the council with or without cause. Because there is no evidence that Great Plains is controlled in any way by nontribal members and, in fact, is ultimately controlled by tribal officials, this factor strongly weighs in favor of finding that Great Plains is an arm of the tribe. See id., 183–84 (concluding that this factor weighed against entity controlled in part by nontribal members when doing business off reservation). The record, however, does not contain evidence beyond Grant's affidavit of

[11] The control factor requires a balancing of various considerations. The court in *Williams* noted that the outsourcing of "day-to-day management to a [nontribal] entity . . . would not in itself weigh against immunity, given the other evidence of [t]ribal control." *Williams* v. *Big Picture Loans, LLC*, supra, 929 F.3d 183. The court deemed the control factor to weigh in favor of immunity, regardless of the outsourcing of day-to-day management, because the first entity it considered was otherwise managed by tribal members who were appointed by the council and empowered to run the business. Id. In contrast, the Fourth Circuit held that the control factor did not weigh in favor of immunity for the second entity it considered in *Williams*. Id., 183–84. The court came to this different conclusion because the second entity was not managed by tribal members on a daily basis, the tribal officers had little knowledge of the management practices and delegated strategic tasks to nontribal members, and the entity conducted most of its business off reservation with nontribal members. Id., 183. The culmination of these facts led the court to conclude that the control factor weighed slightly against immunity for the second entity. Id., 184.

the tribe's control of Clear Creek or of its structure or management. The affidavit merely describes the entity as wholly owned by the tribe, with officers appointed and removed by the tribal council. The affidavit does not provide information about the actual control and management that the tribe has over Clear Creek. Without further documentation or description, there is insufficient evidence in the record to determine whether this factor weighs in favor of Clear Creek being an arm of the tribe.

4

Tribal Intent

The fourth factor examines "solely" the tribe's intent to extend its sovereign immunity to the entities. *Williams* v. *Big Picture Loans, LLC*, supra, 929 F.3d 184. Tribal intent is often expressly stated in the tribal ordinance or articles of incorporation that create the entity, but it can also be inferred from "the tribe's actions or other sources." *People ex rel. Owen* v. *Miami Nation Enterprises*, supra, 2 Cal. 5th 246. It is not appropriate to consider the motives behind the tribe's intent, but only to consider whether any intent was expressed at all. See *Williams* v. *Big Picture Loans, LLC*, supra, 184 (holding that district court improperly considered "driving force for the [t]ribe's intent to share its immunity" (internal quotation marks omitted)).

Here, the tribe expressly and unequivocally indicated its intent to extend its immunity to Great Plains in the operating agreement, which supports Grant's statement in his affidavit that the "[t]ribe granted [the entities] all privileges and immunities enjoyed by the [t]ribe, including, but not limited to, immunities from suit as well as any [f]ederal, [s]tate, and local taxation or regulation." The tribe's LLC Act, under which Great Plains was formed, further evidences tribal intent to extend immunity to entities created thereunder when the tribe

Great Plains Lending, LLC *v.* Dept. of Banking

is the sole member, as in the present case, by providing in relevant part: "Such [limited liability companies] . . . shall, therefore, be entitled to all of the privileges and immunities enjoyed by the [t]ribe, including, but not limited to, immunities from suit in [f]ederal, [s]tate, and [t]ribal courts and from [f]ederal, [s]tate, and local taxation or regulation . . . ." Because the record undisputedly indicates tribal intent to extend immunity to Great Plains, this factor weighs in favor of it being an arm of the tribe. Once again, however, the only evidence of tribal intent to extend immunity to Clear Creek is contained in Grant's affidavit in a single conclusory statement. Thus, without further information from articles of incorporation, bylaws, or the tribe's Corporation Act, there is insufficient evidence in the record for us to conclude that this factor weighs in favor of finding that Clear Creek is entitled to tribal sovereign immunity.

5

Financial Relationship

The fifth factor contemplates the financial relationship between the tribe and the entities. See, e.g., *Williams* v. *Big Picture Loans, LLC*, supra, 929 F.3d 184; *Breakthrough Management Group, Inc.* v. *Chukchansi Gold Casino & Resort*, supra, 629 F.3d 1194. One relevant consideration is whether a judgment against an entity would affect the tribe's assets, as well. See *Williams* v. *Big Picture Loans, LLC*, supra, 184. Although direct tribal liability "is neither a threshold requirement for immunity nor a predominant factor in the overall analysis," if a judgment against the entity would affect the tribe's assets, this factor will more likely weigh in favor of immunity, even if the tribe's liability is "formally limited." (Internal quotation marks omitted.) Id., quoting *People ex rel. Owen* v. *Miami Nation Enterprises*, supra, 2 Cal. 5th 247. Courts also examine "the extent to which a tribe 'depends . . . on the [entity] for reve-

Great Plains Lending, LLC *v.* Dept. of Banking

nue to fund its governmental functions, its support of tribal members, and its search for other economic development opportunities.' '' *Williams* v. *Big Picture Loans, LLC*, supra, 184, quoting *Breakthrough Management Group, Inc.* v. *Chukchansi Gold Casino & Resort*, supra, 1195. "If a judgment against the entity would significantly impact the tribal treasury, this factor will weigh in favor of immunity even if the tribe's liability for an entity's actions is formally limited." *Williams* v. *Big Picture Loans, LLC*, supra, 184.

Grant's affidavit clearly states that both entities are wholly owned by the tribe. Section 5.1 of the operating agreement of Great Plains provides that "[a]ll [p]rofits and [l]osses shall be allocated to the [t]ribe as the sole [m]ember," and § 5.2 provides that "[a]ll [c]ash [f]low shall be distributed to the [t]ribe, at least quarterly unless otherwise approved by the [t]ribal [c]ouncil." This language clearly indicates the financial interests of the tribe as the sole member and owner of Great Plains. Although there is no allegation or evidence that the profits generated by Clear Creek are being directed anywhere other than to the tribe, the record is less descriptive of any financial relationship between Clear Creek and the tribe because it does not include articles of incorporation, bylaws, or any other legal documents governing the structure and operation of Clear Creek.

Instead of challenging the existence of the financial relationship between the business entities and the tribe, the defendants argue that there is not enough information in the record to find that there is a *sufficiently* significant financial relationship to establish that the entities are arms of the tribe.[12] Similarly, the trial court

---

[12] Beyond arguing that the record is insufficient, the department emphasizes the nature of the harm in this case, namely, the high interest rates imposed on Connecticut residents who entered into loans with the entities. The department's point is well taken from the perspective of its responsibility of protecting Connecticut's citizens from predatory financial practices. An entity's entitlement to tribal sovereign immunity, however, is an inquiry distinct from the ethics of its business. Entitlement to tribal sovereign immu-

Great Plains Lending, LLC *v.* Dept. of Banking

concluded that, although Grant's affidavit and the supporting documents addressed this factor to a certain extent, the record was insufficient to establish entitlement to tribal sovereign immunity. The trial court based its conclusion on the additional inquiry outlined in *Miami Nation*, namely, that the evidence failed to show that the entity *actually*, rather than just nominally, promoted tribal self-governance.

The record does not provide a detailed accounting of each entity's financial records or the degree to which each entity generates profits that support specific tribal activities. Although such an accounting would indeed provide clear evidence of a functioning financial relationship between the tribe and the entity, it is not a necessary factor. See *People ex rel. Owen* v. *Miami Nation Enterprises*, supra, 2 Cal. 5th 248 ("[d]etermining whether this factor weighs in favor of immunity requires a consideration of degree rather than a binary decision"). Just as a financial relationship in and of itself is not dispositive of the tribal arm analysis, we decline to require a sovereign to provide detailed information about the extent to which an entity supports its budget, when they otherwise furnish significant evidence that an entity is an arm of the tribe. See id., 247 (holding that whether judgment against entity would reach tribe's assets is relevant but "neither a threshold requirement for immunity nor a predominant factor in the overall analysis"). Because the record sufficiently demonstrates a financial relationship between the tribe and Great Plains, and there is no evidence to the contrary, we conclude that this factor, although perhaps the weakest of the five, also weighs in favor of arm of

nity "cannot and does not depend on a court's evaluation of the respectability of the business in which a tribe has chosen to engage." *Williams* v. *Big Picture Loans, LLC*, supra, 929 F.3d 185. Congress, rather than the courts, is responsible for abrogating tribal sovereign immunity. See, e.g., *Michigan* v. *Bay Mills Indian Community*, supra, 572 U.S. 800.

Great Plains Lending, LLC *v.* Dept. of Banking

the tribe status for Great Plains. The record does not contain enough evidence to conclude that this factor weighs in favor of immunity for Clear Creek because the existence of a financial relationship is indicated only by Grant's conclusory affidavit stating that Clear Creek is a wholly owned entity of the tribe. The record does not specifically indicate whether any profits or funds from Clear Creek are directed to the tribe, although the fact that it is wholly owned by the tribe could support an inference that its profits are directed to the tribe. Without more detail on this point, however, we cannot conclude that this factor weighs in favor of Clear Creek being an arm of the tribe.

We have considered these factors in light of the underlying policies supporting tribal sovereign immunity, namely, the promotion of tribal self-governance and economic development, and the "protection of the tribe's monies and the promotion of commercial dealings between Indians and non-Indians." (Internal quotation marks omitted.) *Williams* v. *Big Picture Loans, LLC*, supra, 929 F.3d 185, quoting *Breakthrough Management Group, Inc.* v. *Chukchansi Gold Casino & Resort*, supra, 629 F.3d 1187–88. In regard to Great Plains, the record reflects that it was created under tribal law and is controlled by directors appointed by the council for the purpose of promoting tribal economic development and welfare. The record further indicates a significant financial relationship between the tribe and Great Plains, which leads us to conclude that withholding tribal sovereign immunity from Great Plains as an arm of the tribe would interfere with the tribe's self-governance and economic development. See *Williams* v. *Big Picture Loans, LLC*, supra, 185 (declining to find no immunity when that conclusion, even if made to protect tribe, would weaken tribe's ability to self-govern). Accordingly, we conclude that all five factors indicate that Great Plains is an arm of the tribe as

Great Plains Lending, LLC *v.* Dept. of Banking

a matter of law. Because there is no indication that Congress abrogated immunity or any claim that the tribe has waived its immunity, we conclude that Great Plains is entitled to tribal sovereign immunity as an arm of the tribe. See, e.g., *Santa Clara Pueblo* v. *Martinez*, supra, 436 U.S. 58; *Williams* v. *Big Picture Loans, LLC*, supra, 185. We conclude, however, that the minimal evidence in the record in regard to Clear Creek, consisting of only a certificate of license, the resolution creating American Web Loan, Inc., and Grant's affidavit containing conclusory statements, is insufficient to support a similar conclusion for Clear Creek. Thus, because the record supports a conclusion of immunity as a matter of law only as to Great Plains, the trial court improperly remanded the case to the commissioner for further proceedings as to both entities, rather than directing judgment on this point in regard to Great Plains and remanding to the department for further proceedings as to Clear Creek.

IV

Having determined that Great Plains is an arm of the tribe entitled to tribal sovereign immunity, we now turn to the issue of whether Shotton similarly shares in that immunity.[13] The defendants imposed both civil penalties and injunctive relief against Shotton. The defendants argue that Shotton, rather than the tribe, is the real party in interest and that the department therefore took action against Shotton in his individual, rather than official capacity, precluding him from claiming immunity from civil penalties or injunctive relief. The defendants emphasize that the department took action

---

[13] We note that our discussion in this section regarding Shotton's immunity is applicable to his claimed immunity as an officer of both entities. However, because there is not enough evidence in the record to conclude that Clear Creek is an arm of the tribe, the ultimate determination of Shotton's immunity regarding his affiliation with Clear Creek remains a matter for the commissioner to determine on remand in accordance with this opinion.

Great Plains Lending, LLC *v.* Dept. of Banking

against Shotton in his individual capacity due to "his personal participation in violations of the state's usury and banking laws." In response, the plaintiffs argue that the trial court correctly determined that the tribe is the real party in interest, rendering Shotton immune from civil penalties and injunctive relief. They contend that the tribe is the real party in interest because the defendants do not allege any specific actions taken by Shotton personally in relation to the lending activities of the entities, and they emphasize that any damages or injunctive relief against Shotton would affect the tribe's treasury. We conclude that the tribe is the real party in interest, rendering Shotton immune from civil penalties but not injunctive relief.

The following general background principles inform the extent to which Shotton is entitled to share in the tribe's immunity. Members of the tribe do not have tribal sovereign immunity simply by virtue of their status as members. Cohen's Handbook of Federal Indian Law, supra, § 7.05 [1] [a], p. 638 and n.13, citing *Puyallup Tribe, Inc.* v. *Dept. of Game*, 433 U.S. 165, 172–73, 97 S. Ct. 2616, 53 L. Ed. 2d 667 (1977). In the absence of tribal sovereign immunity or a federal law to the contrary, "Indians going beyond reservation boundaries have generally been held subject to nondiscriminatory state law otherwise applicable to all citizens of the [s]tate." *Mescalero Apache Tribe* v. *Jones*, 411 U.S. 145, 148–49, 93 S. Ct. 1267, 36 L. Ed. 2d 114 (1973). In determining whether a tribal official is protected by tribal sovereign immunity, the United States Supreme Court has extended the doctrines governing state and federal employee liability to the context of tribal sovereign immunity. See *Lewis* v. *Clarke*, supra, 137 S. Ct. 1290; see also Cohen's Handbook of Federal Indian law, supra, § 7.05 [1] [a], p. 638 n.18, citing *Regents of the University of California* v. *Doe*, 519 U.S. 425, 429, 117 S. Ct. 900, 137 L. Ed. 2d 55 (1997) (sovereign immunity

Great Plains Lending, LLC *v.* Dept. of Banking

bars suit against state officers to recover money from state). Tribal officials are, therefore, entitled to an extension of tribal sovereign immunity if two conditions are met: (1) the tribe, rather than the individual officer, is the real party in interest, *and* (2) the tribal official acted within the scope of his or her authority. See *Lewis* v. *Clarke*, supra, 1290–91; see also *Chayoon* v. *Chao*, 355 F.3d 141, 143 (2d Cir.) ("[the plaintiff] cannot circumvent tribal immunity by merely naming officers or employees of the [t]ribe when the complaint concerns actions taken in [the] defendants' official or representative capacities and the complaint does not allege they acted outside the scope of their authority"), cert. denied, 543 U.S. 966, 125 S. Ct. 429, 160 L. Ed. 2d 336 (2004). We address each of these conditions in turn.

A

The United States Supreme Court has drawn a distinction between individual and official capacity suits for purposes of the immunity of tribal officers. See *Lewis* v. *Clarke*, supra, 137 S. Ct. 1292. In *Lewis*, the plaintiffs sued the defendant, a limousine driver employed by an arm of a tribe, in his individual capacity after his involvement in a car accident on an interstate highway away from the reservation. Id., 1290. The defendant asserted that he was protected by tribal sovereign immunity because of his employment for an arm of the tribe and that his conduct was within his official duties as an employee, namely, driving the limousine, thus entitling him to immunity. Id. The court disagreed with the defendant and concluded that tribal sovereign immunity did not extend to him because the remedy sought by the plaintiffs in *Lewis* would operate against the individual limousine driver, rather than the tribe, as a consequence of his *personal conduct* that resulted in a tort away from the reservation.[14] Id., 1292–93. The

---

[14] We note that whether there is an indemnification agreement between a tribal employee and the tribe does not ultimately determine whether the tribe's sovereign immunity will extend to that individual. See *Lewis* v. *Clarke*,

Great Plains Lending, LLC *v.* Dept. of Banking

court noted that this result did not abrogate tribal sovereignty because the official was being sued in his personal rather than official capacity, and he was therefore subject to the same exposure to liability as state and federal officials under the same circumstances. Id., 1292–93. The court highlighted the distinction between official capacity claims when "the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself," and personal capacity claims which "seek to impose *individual* liability [on] a government officer for actions taken under color of state law." (Emphasis in original; internal quotation marks omitted.) Id., 1292. Such a distinction is critical because the "identity of the real party in interest dictates what immunities may be available." Id. We therefore address that distinction in detail.

"The general bar against [official capacity] claims . . . does not mean that tribal officials are immunized from [individual capacity] suits *arising out of* actions they took in their official capacities . . . . Rather, it means that tribal officials are immunized from suits brought against them because of their official capacities—that is, *because* the powers they possess in those capacities enable them to grant the plaintiffs relief on behalf of the tribe." (Citation omitted; emphasis altered.) *Native American Distributing* v. *Seneca-Cayuga Tobacco Co.*, 546 F.3d 1288, 1296 (10th Cir. 2008). Generally, individual or "[personal capacity] suits seek to impose personal liability [on] a government official for [wrongful] actions [that] he takes under color of . . . law" and in the course of his official duties. *Kentucky* v. *Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985). "By contrast, official capacity suits ultimately seek to hold the entity of which

_____

supra, 137 S. Ct. 1293 ("an indemnification provision cannot, as a matter of law, extend sovereign immunity to individual employees who would otherwise not fall under its protective cloak").

Great Plains Lending, LLC *v.* Dept. of Banking

the officer is an agent liable, rather than the official himself: they generally represent [merely] another way of pleading an action against an entity of which an officer is an agent.'' (Internal quotation marks omitted.) *Pistor* v. *Garcia*, 791 F.3d 1104, 1112 (9th Cir. 2015), quoting *Kentucky* v. *Graham*, supra, 165–66; see *Pistor* v. *Garcia*, supra, 1112 (focusing on plaintiffs' suit against individual tribal officers rather than against tribe's treasury).[15]

''To identify the real, substantial party in interest, one factor that the court examines is the substance of the claims stated in the complaint, positing inquiries such as . . . [whether] the actions of the state officials [were] taken to further personal interests distinct from the [s]tate's interests . . . . Other factors include . . . whether the unlawful actions of the officials were tied inextricably to their official duties, whether the burden of the relief would be borne by the sovereign if the official had authorized the relief at the outset, whether a judgment would be institutional and official in character so as to operate against the sovereign, and whether the official's actions were ultra vires.'' (Citation omitted; internal quotation marks omitted.) *Solomon* v. *American Web Loan*, supra, 375 F. Supp. 3d 661.

As an example of this often subtle distinction, the United States Court of Appeals for the Tenth Circuit held that the tribe, rather than an individual tribal officer, was the real party in interest when it rejected a breach of contract and civil conspiracy action against

_____

[15] We note that the Ninth Circuit has taken a ''[remedy focused]'' approach to determine the real party in interest, asking ''whether the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the [sovereign] from acting, or to compel it to act.'' (Internal quotation marks omitted.) *Maxwell* v. *San Diego*, 708 F.3d 1075, 1088 (9th Cir. 2013). Such an inquiry is consistent with the guidance provided by the United States Supreme Court in *Kentucky* v. *Graham*, supra, 473 U.S. 159.

Great Plains Lending, LLC *v.* Dept. of Banking

a tribally owned entity and tribal officers. See *Native American Distributing* v. *Seneca-Cayuga Tobacco Co.*, supra, 546 F.3d 1290, 1297. After concluding that a corporate entity was an arm of the tribe and entitled to sovereign immunity, the court rejected the plaintiffs' suit against the individual tribal officials for civil conspiracy. Id., 1296–97. In doing so, the court held that the plaintiffs failed to state a claim against the tribal officers in their individual capacity because there were no allegations of specific conduct by the individuals, including the former chief of the tribe and managers of the entity, which would support a conclusion that any individual had engaged in civil conspiracy. See id., 1297 (noting that plaintiffs failed to seek money damages from officer for wrongful conduct "fairly attributable to the officer himself" (internal quotation marks omitted)). The court characterized the allegations in the complaint as having been "made against the [i]ndividual [d]efendants relat[ing] to decisions and actions taken by them as the principal managers of [the entity], not as individuals." (Internal quotation marks omitted.) Id., 1298. Instead, the court concluded that "[t]here [was] simply nothing more than conclusory allegations that a civil conspiracy exists, and this [was] not enough . . . ." Id.

The record in the present case is determinative of whether the defendants are taking administrative action against Shotton in his individual or official capacity. The department seeks relief from Shotton and the entities in a single proceeding. The record does not indicate, and the defendants do not allege, that Shotton personally engaged in any conduct giving rise to these proceedings. Instead, it appears that the department is seeking relief from Shotton nominally *because* of his official policy-making capacity as a high ranking officer of the tribe and an officer of the entities, rather than as a result of his personal actions taken within the scope of his official capacity. See id., 1297–98 (holding that tribal offi-

Great Plains Lending, LLC *v.* Dept. of Banking

cials were sued in official capacity because plaintiffs failed to allege individual conduct by officers but made allegations against them only as "the principal managers of [the entity]" (internal quotation marks omitted)); cf. *Maxwell* v. *San Diego*, 708 F.3d 1075, 1087, 1089 (9th Cir. 2013) (tribal emergency employees were not entitled to tribal sovereign immunity when they were sued for personal actions resulting in gross negligence); *Solomon* v. *American Web Loan*, supra, 375 F. Supp. 3d 662 (holding that nontribal, corporate official who engaged in ultra vires conduct was not entitled to tribal immunity); *Williams & Cochrane, LLP* v. *Quechan Tribe of Fort Yuma Indian Reservation*, Docket No. 3:17-cv-01436-GPC-MDD, 2018 WL 2734946, *15–16 (S.D. Cal. June 7, 2018) (concluding that defendants who personally engaged in fraudulent conduct were not entitled to tribal sovereign immunity). Put differently, Shotton's status as a high ranking official of both the tribe and the entities is the sole reason he was a target of the department's administrative action; the department has not taken action against any other officials or employees involved with the entities' lending practices or management. This case, therefore, is distinguishable from those cited by the defendants in which courts deemed the tribal officers to be the real parties in interest when sued in their individual capacity for personal conduct.[16]

---

[16] The cases cited by the defendants are distinguishable because they do not concern actions by tribal employees acting in a leadership or policy-making capacity for a tribal entity that renders their actions inextricably bound with those of the entity; instead, they concern actions personally taken by tribal employees. See *Pistor* v. *Garcia*, supra, 791 F.3d 1108–1109, 1113–14 (tribe's chief of police was deemed unprotected by tribal sovereign immunity when he was sued in individual capacity for unconstitutionally detaining plaintiffs); *Maxwell* v. *San Diego*, supra, 708 F.3d 1087–89 (individual members of tribal fire department did not have immunity for gross negligence in providing emergency medical care); *JW Gaming Development, LLC* v. *James*, Docket No. 3:18-cv-02669-WHO, 2018 WL 4853222, *4 (N.D. Cal. October 5, 2018) (tribal employees were unprotected by tribal sovereign immunity when they were sued in individual capacity for fraudulent misconduct resulting in damages), aff'd, 778 Fed. Appx. 545 (9th Cir. 2019), cert. denied,     U.S.    , 140 S. Ct. 1297, 206 L. Ed. 2d 376 (2020); *Solomon* v.

Great Plains Lending, LLC *v.* Dept. of Banking

Thus, we conclude that the tribe, rather than Shotton, is the real party in interest with respect to the administrative action in this case.

B

We next turn to whether Shotton's actions were within the scope of his official authority, thus entitling him to share in tribal sovereign immunity. See, e.g., *Bassett* v. *Mashantucket Pequot Tribe*, supra, 204 F.3d 359. The mere allegation that Shotton was acting in his capacity as a corporate official of entities allegedly violating Connecticut law does not alone establish that he was acting outside the scope of his authority. See *Bassett* v. *Mashantucket Pequot Museum & Research Center, Inc.*, 221 F. Supp. 2d 271, 280–81 (D. Conn. 2002) (alleging illegality of defendants' actions was insufficient to surmount immunity because actions must be " 'manifestly or palpably beyond his authority' "). Here, the defendants fail to allege, let alone prove, any actions by Shotton that are beyond the scope of his authority as an officer of the tribe and entities or that those actions were taken to further his personal interests as distinct from the tribe's interests. Indeed, the department fails to specifically allege any actions by Shotton personally at all. The entirety of Shotton's actions that allegedly violated Connecticut law took place solely within the context of the entities' lending

*American Web Loan*, supra, 375 F. Supp. 3d 661–62 (tribal sovereign immunity did not protect nontribal, corporate official who personally profited at rate that exceeded tribe's profits, did not act in interest of tribe, and was " 'architect' " of fraudulent lending scheme); *Williams & Cochrane, LLP* v. *Quechan Tribe of Fort Yuma Indian Reservation*, supra, 2018 WL 2734946, *15–16 (defendants were sued in individual capacity because they allegedly took part in creating fraudulent lending scheme); *Pennachietti* v. *Mansfield*, Docket No. 17-02582, 2017 WL 6311646, *2–4 (E.D. Pa. December 11, 2017) (tribal lending manager was not entitled to tribal immunity when he was sued in his individual capacity for usurious loans personally initiated by him when tribal entity was not named as defendant), appeal dismissed, Docket No. 18-1070, 2018 WL 3475602 (3d Cir. January 31, 2018).

Great Plains Lending, LLC *v.* Dept. of Banking

operations. The record does not indicate that Shotton did anything outside the scope of executing his official duties as an officer of the tribe and of the entities.[17]

Having concluded the tribe is the real party in interest and that Shotton's actions were entirely within the scope of his duties for the tribe and the entities, we now determine whether the tribe's sovereign immunity extends to each form of relief sought by the defendants against Shotton in his capacity as an officer of Great Plains.

"In the tribal immunity context, a claim for damages against a tribal official lies outside the scope of tribal immunity only [when] the complaint pleads—and it is shown—that a tribal official acted beyond the scope of his authority to act on behalf of the [t]ribe. . . . Claimants may not simply describe their claims against a tribal official as in his individual capacity in order to eliminate tribal immunity. . . . [A] tribal official—even if sued in his individual capacity—is . . . stripped of tribal immunity [only] when he acts manifestly or palpably beyond his authority . . . . [I]n order to overcome sovereign immunity, the [plaintiff] must do more than allege that the defendants' conduct was in excess of their . . . authority; [the plaintiff] also must allege or otherwise establish facts that reasonably support those allegations." (Internal quotation marks omitted.) *Drabik* v. *Thomas*, 184 Conn. App. 238, 247, 194 A.3d 894, cert. denied, 330 Conn. 929, 194 A.3d 778 (2018); see also *Chayoon* v. *Chao*, supra, 355 F.3d 143 (there is no excep-

___

[17] We note that determining that the tribe, rather than Shotton, is the real party in interest is consistent with our analysis in *Spring* v. *Constantino*, 168 Conn. 563, 362 A.2d 871 (1975), in which we outlined the criteria for determining whether a suit is against the state as the real party interest: "(1) a state official has been sued; (2) the suit concerns some matter in which that official represents the state; (3) the state is the real party against whom relief is sought; and (4) the judgment, though nominally against the official, will operate to control the activities of the state or subject it to liability." Id., 568.

Great Plains Lending, LLC *v.* Dept. of Banking

tion to sovereign immunity when only relief sought against tribal officials was damages).

Because the department fails to allege that Shotton acted beyond the scope of his authority as a tribal official, we conclude that the department's conclusory and nominal allegation, which does not allege specific actions taken by Shotton, is legally insufficient to surmount his immunity from civil penalties.[18] See *Lewis* v. *Clarke*, supra, 137 S. Ct. 1291.

C

The defendants contend that prospective injunctive relief is available, notwithstanding any tribal sovereign immunity, under *Ex parte Young*, 209 U.S. 123, 133, 28 S. Ct. 441, 52 L. Ed. 714 (1908), which allows plaintiffs to seek prospective, injunctive relief against state officials for violations of federal law. In response, the plaintiffs argue that Shotton is entitled to share in tribal sovereign immunity because the exception under *Ex parte Young* is limited to federal causes of action and does not extend to state causes of action against tribal officials. The plaintiffs further contend that *Ex parte Young* does not apply to Shotton because (1) any discussion of alternative avenues for relief against tribal officials by the United States Supreme Court in *Michigan* v. *Bay Mills Indian Community*, supra, 572 U.S. 782, was dictum, and (2) *Ex parte Young* does not extend to actions taken by the state against tribal officials for violations of state law. In response, the defendants cite the recent decision of the United States Court of Appeals for the Second Circuit in *Gingras* v. *Think Finance, Inc.*, 922 F.3d 112, 121 (2d Cir. 2019), cert. denied sub nom. *Sequoia Capital Operations, LLC* v. *Gingras*, U.S. , 140 S. Ct. 856, 205 L. Ed. 2d 458

---

[18] We note the department describes its claim against Shotton in a conclusory manner as arising from "his personal participation in violations of the state's usury and banking laws."

Great Plains Lending, LLC *v.* Dept. of Banking

(2020), and argue that Shotton is not immune from injunctive relief for actions arising from violations of state law. We agree with the defendants and conclude that tribal sovereign immunity does not render Shotton immune from the injunctive relief ordered by the department.

The United States Supreme Court addressed a tribal official's entitlement to sovereign immunity from injunctive relief in *Michigan* v. *Bay Mills Indian Community*, supra, 572 U.S. 782. Relying on *Ex parte Young*, supra, 209 U.S. 123, the court held that tribal sovereign immunity does not bar suit for injunctive relief against tribal officers responsible for unlawful conduct. *Michigan* v. *Bay Mills Indian Community*, supra, 785, 796. *Bay Mills* concerned tribal sovereign immunity in the context of Indian gaming. Id., 790–93. The court held that the Indian Gaming Regulatory Act, 25 U.S.C. § 2710 et seq., did not abrogate tribal sovereign immunity for gaming violations taking place away from tribal land "because states already had other ways to vindicate state gaming law violations there." *Gingras* v. *Think Finance, Inc.*, supra, 922 F.3d 122, citing *Michigan* v. *Bay Mills Indian Community*, supra, 794–95. The court in *Bay Mills* noted that "Michigan could bring suit against tribal officials or employees (rather than the [t]ribe itself) [when] seeking an injunction . . . ." *Michigan* v. *Bay Mills Indian Community*, supra, 796.

The United States Court of Appeals for the Second Circuit, the decisions of which are particularly persuasive in resolving questions of federal law,[19] recently relied in part on *Bay Mills* and expressly concluded that the exception to sovereign immunity announced

---

[19] "In considering claims of federal law, it is well settled that, when the United States Supreme Court has not spoken, we find decisions of the Second Circuit particularly persuasive." *Feehan* v. *Marcone*, 331 Conn. 436, 478, 204 A.3d 666, cert. denied, U.S. , 140 S. Ct. 144, 205 L. Ed. 2d 35 (2019).

Great Plains Lending, LLC *v.* Dept. of Banking

in *Ex parte Young* extended to injunctive relief to bar tribal officials from violating state law, in addition to federal law.[20] *Gingras* v. *Think Finance, Inc.*, supra, 922 F.3d 121. In *Gingras*, the Second Circuit emphasized that, in *Bay Mills*, the United States Supreme Court had "made clear . . . that Michigan could still 'resort to other mechanisms, including legal actions against the responsible individuals' to vindicate violations of Michigan state law."[21] Id., quoting *Michigan* v.

---

[20] The plaintiffs also contend that the *Ex parte Young* exception is not available to the defendants because the defendants took action against Shotton in his individual, rather than official, capacity, rendering *Bay Mills* and *Ex parte Young* inapplicable. However, as the Second Circuit stated in *Gingras*, "the only material difference between individual and official capacity suits for prospective, injunctive relief is that a judgment against the latter is enforceable against future successive officers whereas judgments against the former are not." *Gingras* v. *Think Finance, Inc.*, supra, 922 F.3d 123. Therefore, it is irrelevant for the purposes of determining immunity from injunctive relief whether the tribal official is being sued in his or her individual or official capacity.

[21] A recent Ninth Circuit decision, *Jamul Action Committee* v. *Simermeyer*, 974 F.3d 984 (9th Cir. 2020), petition for cert filed sub nom. *Jamul Action Committee* v. *Sequoyah* (U.S. May 11, 2021) (No. 20-1559), casts some doubt on the applicability of *Ex parte Young* when tribal officials are sued for injunctive relief but the nature of the relief indicates that the tribe is the real party in interest. In *Jamul Action Committee*, the court held that, although suits seeking prospective, injunctive relief against tribal officials in their official capacity are permissible under *Ex parte Young*, such suits are not permissible when a plaintiff seeks "to circumvent sovereign immunity by naming some arbitrarily chosen governmental officer or an officer with only general responsibility for governmental policy." Id., 994. The Ninth Circuit noted that the United States Supreme Court has limited the kind of relief a plaintiff may seek under *Ex parte Young* to prevent the suit from becoming one against the sovereign as the real party in interest. Id. For example, the Supreme Court has not extended *Ex parte Young* to instances in which plaintiffs sought to compel quiet title of a sovereign's property, compel payment of a sovereign's legal obligation, or to compel specific performance by the sovereign. Id., 994–95, citing *Idaho* v. *Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 117 S. Ct. 2028, 138 L. Ed. 2d 438 (1997), *Edelman* v. *Jordan*, 415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974), and *Ex parte Ayers*, 123 U.S. 443, 8 S. Ct. 164, 31 L. Ed. 216 (1887). We nevertheless find *Ex parte Young* applicable in this case because *Jamul Action Committee* is distinguishable; enjoining Shotton's future actions with respect to payday lending operations does not operate against the tribe in

Great Plains Lending, LLC *v.* Dept. of Banking

*Bay Mills Indian Community*, supra, 572 U.S. 785; see also *Alabama* v. *PCI Gaming Authority*, 801 F.3d 1278, 1290 (11th Cir. 2015) ("tribal officials may be subject to suit in federal court for violations of state law under the fiction of *Ex parte Young* when their conduct occurs outside of Indian lands"). We agree with the Second Circuit's conclusion that this statement by the United States Supreme Court was not dictum. See *Gingras* v. *Think Finance, Inc.*, supra, 122. The Second Circuit noted that the Supreme Court had issued "[t]hree distinct opinions in *Bay Mills* [that] recognized the availability of *Ex parte Young* actions for violations of state law." Id.; see *Michigan* v. *Bay Mills Indian Community*, supra, 796; *Michigan* v. *Bay Mills Indian Community*, supra, 809 (Sotomayor, J., concurring); *Michigan* v. *Bay Mills Indian Community*, supra, 822–24 (Thomas, J., dissenting). Accordingly, we follow the Second Circuit's decision in *Gingras* and conclude that Shotton is not entitled to tribal sovereign immunity from suit for prospective injunctive relief.[22]

Application of the *Ex parte Young* exception represents a balanced approach that accounts for the com-

the same way as would compelling payment directly from tribal coffers or surrendering tribal land. The department does not indicate the specific conduct taken by Shotton personally but, rather, proceeds against him in his official capacity to enjoin further unlawful practices. Such relief is appropriate under *Ex parte Young* and is consistent with the Second Circuit's decision in *Gingras* v. *Think Finance, Inc.*, supra, 922 F.3d 112.

[22] We note that "[a]n officer in an [individual capacity] action . . . may be able to assert *personal* immunity defenses, such as, for example, absolute prosecutorial immunity in certain circumstances." (Emphasis in original.) *Lewis* v. *Clarke*, supra, 137 S. Ct. 1292; see also *Pearson* v. *Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) ("qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known" (internal quotation marks omitted)). Here, the plaintiffs assert, for the first time on appeal, that Shotton is entitled to qualified immunity. However, such a claim was not presented to the commissioner or the trial court and, therefore, is not properly before this court. See, e.g., *Lewis* v. *Clarke*, supra, 1292 n.2 (declining to address official immunity defense that was raised for first time on appeal).

peting interests of two sovereigns, tribes and states, and allows the state to enforce its laws against tribal officials while "providing a neutral forum for the peaceful resolution of disputes between domestic sovereigns, and it fairly holds Indian tribes acting [off reservation] to their obligation to comply with generally applicable state law." *Gingras* v. *Think Finance, Inc.*, supra, 922 F.3d 124. Without such balancing via the provision of injunctive relief, the state would be left without any recourse to protect its citizens from tribal activities that run afoul of state laws. See id. Accordingly, although Shotton is immune from the civil penalties sought to be imposed by the department, we conclude that he is not immune from injunctive relief prospectively enjoining him from violating Connecticut usury and banking laws in connection with his duties for the tribe and the entities.

In summary, we conclude that the trial court incorrectly determined that further proceedings were required to determine whether Great Plains is an arm of the tribe. Instead, the record establishes that Great Plains is an arm of the tribe as a matter of law and, therefore, entitled to share in the tribe's sovereign immunity from administrative action. With respect to Shotton's individual immunity, we conclude that the trial court correctly determined that the tribe is the real party in interest, rendering Shotton immune from the civil penalties imposed by the department but not its order of prospective injunctive relief in regard to his actions as an official of Great Plains. We further hold that the trial court correctly concluded that further proceedings are required to determine whether Clear Creek is an arm of the tribe and, therefore, entitled to immunity from the order imposing civil money penalties against that entity, and also to determine whether Shotton is entitled to tribal sovereign immunity in regard to his actions taken as an official of Clear Creek.

The judgment is reversed insofar as the trial court concluded that further proceedings were required to determine whether Great Plains is an arm of the tribe and insofar as the trial court upheld the imposition of civil penalties against Shotton in his capacity as an officer of Great Plains, and the case is remanded with direction to render judgment sustaining the administrative appeal in part and directing the commissioner to dismiss the administrative proceedings against Great Plains, to vacate the imposition of civil penalties against Shotton in his capacity as an officer of Great Plains, and to remand the case to the commissioner for further proceedings to determine, in accordance with this opinion, whether Clear Creek is an arm of the tribe and whether Shotton is entitled to tribal sovereign immunity in regard to his actions taken as an official of Clear Creek; the judgment is affirmed in all other respects.

In this opinion the other justices concurred.

————————————————